Ruth A. MARQUART, Plaintiff–Appellee,

v.

LODGE 837, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Defendant–Appellant.

Nos. 93–3784, 93–3787.

United States Court of Appeals, Eighth Circuit.

Argued April 14, 1994.

Decided June 13, 1994.

D. Eric Sowers, St. Louis, MO, argued, for appellant.

Jerome A. Diekemper, St. Louis, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, OAKES,* Senior Circuit Judge, and FAGG, Circuit Judge.

OAKES, Senior Circuit Judge.

Ruth Marquart appeals from an October 1, 1993, judgment of the United States District Court for the Eastern District of Missouri, Jean C. Hamilton, *Judge,* granting in part the motion of District Lodge # 837 of the International Association of Machinists & Aerospace Workers (the "Union") for an award of attorneys' fees to be paid by Marquart pursuant to section 706(k) of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–5(k) (1988 & Supp. IV 1992).

Marquart brought the underlying action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (1988 & Supp. IV 1992). Marquart alleged that the Union, her exclusive bargaining representative during her employment with McDonnell Douglas Corporation, retaliated against her because she asserted her Title VII rights, or, in the alternative, that the Union acquiesced in or conspired with her employer to retaliate against her on the basis of her sexual harassment complaint by refusing to process her grievances. Four days before trial, Marquart voluntarily dismissed her complaint with prejudice. Motion to Dismiss, *Marquart v. District Lodge # 837,* No. 92–00055 (E.D.Mo. Jan. 21, 1993). The district court granted Marquart's voluntary motion for dismissal, but awarded attorneys' fees to the Union on two grounds. First, without analysis, it held that the Union was a prevailing party for purposes of section 706(k). Second, in applying the rigorous standard articulated by the Supreme Court in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), the court held that Marquart's claims were "without foundation." Memorandum and Order at 3, *Marquart v. District Lodge # 837,* No. 92–00055 (E.D.Mo. Oct. 1, 1993).

We have been asked to decide two questions on appeal. First, was the Union a

prevailing party under section 706(k)? If so, did the district court correctly award attorneys' fees to the Union; in other words, were there sufficient grounds to determine that Marquart's claim was either frivolous, unreasonable, or groundless? We need not address the question on cross-appeal, whether the district court abused its discretion by reducing the rate of fees requested by the Union, because we find that, as a matter of law, the Union was not entitled to attorneys' fees.

### I. *Standard of Review*

Before examining the events leading to the underlying dispute, it is significant to discuss the standard of review in this case.

The Union argues that the scope of our review is limited because an award of attorneys' fees is within the district court's discretion. *Standley v. Chilhowee R–IV Sch. Dist.,* 5 F.3d 319, 324 (8th Cir.1993). Therefore, according to the Union, we should review the award of attorneys' fees under the abuse of discretion standard.

We agree that the scope of our review is limited where the district court has made a correct determination that an award of attorneys' fees was within its discretion. Nevertheless, we will overturn a fee award where the district court has made an "error in implementing the governing legal standards." *Standley,* 5 F.3d at 324 (citations and internal quotation marks omitted); *Bobbitt v. Paramount Cap Mfg. Co.,* 942 F.2d 512, 514 (1991); Henry J. Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 783–84 (1982).

In this case, we are faced not with the question whether the district court abused its discretion in awarding the attorneys' fees, but rather, with the question whether, as a matter of law, the district court may award attorneys' fees to a defendant where the plaintiff voluntarily dismisses her or his Title VII complaint. We review this question of law *de novo.* If we find that, under such circumstances, a district court may award

---

* The HONORABLE JAMES L. OAKES, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

attorneys' fees, that is, if we find that the Union was a "prevailing party" for purposes of Title VII and that the underlying action was "frivolous, unreasonable, or groundless," then we will review this award of attorneys' fees under the abuse of discretion standard.

## II. *Background*

### A. Events Leading To The Underlying Dispute

From 1980 through 1991, the McDonnell Douglas Corporation employed Ruth Marquart as a "utility worker." At all times relevant, Marquart was a member in good standing of the Union. A collective agreement between the Union and McDonnell Douglas covered the terms and conditions of her employment.

In her complaint, Marquart alleged that, from 1985 through 1989, McDonnell Douglas, through various employees, created a hostile work environment. Marquart further alleged that those who harassed her were members of the Union, and that the Union refused to process her complaints against the alleged perpetrators because of their status as Union workers.

For example, the Union itself divulges that, on October 2, 1985, McDonnell Douglas, on the advice of its company doctor, ordered Marquart on a mandatory leave of absence "because of reports of abnormal behaviors in the workplace and on the basis of [the company doctor's] examination of [Marquart]." Proposed Findings of Fact and Conclusions of Law of Defendant at 2, *Marquart v. District Lodge # 837*, No. 92–00055 (E.D.Mo. Jan. 19, 1993) ("Union's Proposed Findings of Fact and Conclusions of Law"). Marquart returned to work on or about November 22, 1985, after she produced an outside doctor's certification that she was not psychotic. Marquart conceded that, on this occasion, the Union facilitated her return to work. Marquart's Brief on the Facts at 1, *Marquart v. District Lodge # 837*, No. 92–00055 (E.D.Mo. filed Jan. 20, 1993) ("Marquart's Brief on the Facts"); *see also* Union's Proposed Findings of Fact and Conclusions of Law, *Marquart v. District Lodge # 837*, at 2. Nevertheless, from 1985 through 1989, additional disputes

erupted. From the company's point of view as evinced by the Union in these proceedings, these disputes concerned Marquart's mental health. Union's Proposed Findings of Fact and Conclusions of Law at 2–4.

According to Marquart, by 1989, and consistent with the most current theories on sexual harassment, her working environment was so hostile as to constitute sexual harassment, that is, events that created an increasingly hostile and abusive work environment. *See Harris v. Forklift Sys., Inc.,* — U.S. —, —, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (the language of Title VII "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.") (quoting *Meritor Savs. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Los Angeles Dept. of Water and Power v. Manhart,* 435 U.S. 702, 707, n. 13, 98 S.Ct. 1370, 1375, n. 13, 55 L.Ed.2d 657 (1978)) (some internal quotation marks omitted).

And, consistent with a general theory of union liability under Title VII, Marquart also alleged that the Union refused to process her sexual harassment claims because (1) the Union, as the institutionalized representatives of the workforce, was hostile to the needs of its female employees, and (2) the Union favored the male perpetrators over herself. *See* 42 U.S.C. § 2000e–2(c)(3) (1988) (a union may not "cause or attempt to cause an employer to discriminate against an individual"); *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 669, 107 S.Ct. 2617, 2625, 96 L.Ed.2d 572 (1987) (" 'A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or *in deference to the perceived desires of its white membership,* is liable under both Title [VII] and § 1981, regardless of whether, as a subjective matter, its leaders were favorably disposed toward minorities' ") (quoting *Goodman v. Lukens Steel Co.,* 580 F.Supp. 1114, 1160

(E.D.Pa.1984) (interpreting Title VII on the issue of *racial* harassment)); *Hardison v. Trans World Airlines, Inc.,* 527 F.2d 33, 42 (8th Cir.1975) ("union may be held liable if it purposefully acts or refuses to act in a manner which prevents or obstructs a reasonable accommodation by the employer so as to cause the employer to discriminate"), *rev'd on other grounds,* 432 U.S. 63, 85, 97 S.Ct. 2264, 2277, 53 L.Ed.2d 113 (1977) (holding that neither the union nor the employer failed to provide reasonable accommodation for its jewish employees, and therefore never reaching the question whether the union caused the employer to discriminate).

Specifically, Marquart alleged that by 1989, she was "subjected to extensive sexual harassment of a 'hostile environment' nature at her workplace. She received no remedy from her employer, and she brought this information to [the Union] for assistance. The [Union] did nothing to correct [Marquart]'s complaint. Subsequently, the employer's physician, Dr. Heutel, ordered [Marquart] off the job on extended medical leave for psychiatric reasons once again. [Marquart] protested this action through [the Union], and [the Union] met with company representatives in order to secure [Marquart]'s return to work." Marquart's Brief on the Facts at 1. Marquart acknowledged that when the Union finally did meet with company representatives they allowed Marquart to select one doctor, out of a list of four, with whom she could consult at her expense. "However, this doctor telephoned Dr. Heutel while [Marquart] was waiting in his office, and after that conversation, the doctor told [Marquart] that 'he did not want to get involved.'" *Id.*

Marquart also alleged that she urged the Union to arbitrate her claim, but it refused to do so. Soon thereafter, McDonnell Douglas discharged Marquart. When Marquart went to the Union to seek redress on her discharge, Union employees allegedly ignored her while they proceeded to help male union members. She alleged that at one point, when she stepped away momentarily, these Union employees poured coffee grounds in her purse. She also alleged that, on a sepa-

rate occasion, Union employees placed a dead rat under her car seat. *Id.* at 1–2.

On January 21, 1991, McDonnell Douglas discharged Marquart. Joint Stipulation of Uncontested Facts, *Marquart v. District Lodge # 837,* No. 92–00055 (E.D.Mo. filed Jan. 19, 1993). Subsequently, the Union filed a grievance protesting Marquart's employment termination. *Id.* By letter dated April 16, 1991, the Union informed Marquart that it would not process her grievances to arbitration. *Id.* By letter dated April 17, 1991, the Union withdrew the grievances from arbitration. *Id.*

**B. Procedural History**

Marquart filed a complaint *pro se* with the district court. *See* Amended Complaint, *Marquart v. District Lodge # 837,* No. 92–00055 (E.D.Mo. Jan. 15, 1992). She also filed an application requesting appointment of counsel based on her indigency. *See* Amended Complaint, *Marquart v. District Lodge # 837,* No. 92–00055 (E.D.Mo. Jan. 15, 1992). The court denied this motion. Order, *Marquart v. District Lodge # 837,* No. 92–00055 (E.D.Mo. May 15, 1992). Over the next eleven months, the parties engaged in pre-trial discovery. On November 12, 1992, the Union moved the court for summary judgment on the grounds that Marquart's claim of discrimination was time-barred because Marquart allegedly failed to file her complaint within the ninety-day limitations period provided in 42 U.S.C. § 2000e–5(f) (1988). That is, the Union did not move for summary judgment on the merits. Marquart opposed this motion, and on December 31, 1992, the court denied the Union's motion for summary judgment. Memorandum and Order, *Marquart v. District Lodge # 837,* No. 92–00055 (E.D.Mo. Dec. 31, 1992). On January 21, 1993, four days before trial, Marquart moved to dismiss her complaint with prejudice. Motion to Dismiss, *Marquart v. District Lodge # 837,* No. 92–00055 (E.D.Mo. Jan. 21, 1993). The district court granted Marquart's voluntary motion for dismissal, but permitted application for costs and fees. The Union made such an application, which, on October 1, 1993, the court granted in part.

The district court awarded attorneys' fees to the Union on two grounds. As previously stated, first, without analysis, it held that the Union was a prevailing party for purposes of section 706(k). Second, in applying the *Christiansburg* standard, the court held that Marquart's claims were "without foundation" because

> [t]hroughout the prosecution of this matter, [Marquart] has relied on her own allegations of sexual harassment. Significantly, however, [Marquart] never alleged that the grievances of male union members received more favorable treatment than [Marquart]'s grievance. [Marquart]'s pretrial materials do not indicate that she adduced any substantial evidence in support of her allegations against [the] Union. Moreover, the Court notes that [Marquart]'s allegations that the Union acquiesced in alleged discrimination by [McDonnell Douglas] were extremely tenuous under relevant Eighth Circuit law. *See Omaha Employees Betterment Ass'n v. Omaha*, 883 F.2d 650, 653 (8th Cir.1989) (union's knowledge of employers' alleged discrimination, without more, did not establish cause of action against union). Accordingly, the Court concludes that an award of attorneys' fees in favor of [the] Union is appropriate.

Memorandum and Order at 3–4, *Marquart v. District Lodge # 837*, No. 92–00055 (E.D.Mo. filed Oct. 1, 1993) at 3–4. The court did not, however, award the full amount of attorneys' fees requested by the Union.

On October 27, 1993, Marquart timely filed a notice of appeal. The Union timely cross-appealed. The district court had jurisdiction under 28 U.S.C. §§ 1332(a)(1), 1343(a) (1988). This court has jurisdiction under 28 U.S.C. § 1291 (1988).

### III. *Discussion*

#### A. Section 706(k)

Section 706(k) provides, in pertinent part: In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k). Thus, on its face, Title VII gives the district court discretion to award attorneys' fees to the "prevailing party." Nevertheless, the statute is ambiguous because it neither defines the term, "prevailing party," nor provides guidelines for determining when the district court should exercise its discretion. Instead, Congress left the problems to the courts.

#### B. Prevailing Party: A Definition

Contrary to the assertions of the Union, courts have not established whether a defendant to a Title VII claim becomes a prevailing party when a plaintiff voluntarily withdraws her Title VII complaint. In general, the courts have not analyzed what constitutes a prevailing Title VII *defendant*, although, on numerous occasions, the Supreme Court has negatively defined what a prevailing Title VII *defendant* is, *see, e.g., Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701 ("a plaintiff should not be assessed his [or her] opponent's attorney's fees unless a court finds that his [or her] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so"), and also has defined and redefined what constitutes a prevailing Title VII *plaintiff*. *See, e.g., Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (held that to qualify as a prevailing party, a civil rights *plaintiff* must obtain at least some "actual relief on the merits of his claim [which] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." This relief can be in the form of "an enforceable judgment against the defendant from whom fees are sought ... or comparable relief through a consent decree or settlement."). Therefore, in shaping a definition of "prevailing Title VII defendant," we must determine whether the definition for prevailing plaintiff should be extended into a definition for prevailing defendant. We first examine the reasons for distinguishing between prevailing plaintiffs and prevailing defendants. We then examine the case law. In particular, we examine

post-*Christiansburg* civil rights decisions in various procedural contexts to distill an appropriate balance between various competing values. Finally, we use the rationale for fee-shifting in civil rights cases and the analytical framework used by courts as guidelines for determining prevailing plaintiff status to develop a feasible definition of prevailing Title VII defendants.

### 1. The *Christiansburg* Test For Prevailing Defendant

### a. Distinguishing Prevailing Plaintiffs and Defendants

In interpreting section 706(k), the Supreme Court has distinguished between prevailing Title VII plaintiffs and prevailing Title VII defendants. While a court may award attorneys' fees to a prevailing Title VII plaintiff in "all but very unusual circumstances," *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975), a court may not award attorneys' fees to a prevailing Title VII defendant unless the "court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701. That is, while a prevailing Title VII plaintiff is entitled to attorneys' fees "unless special circumstances would render such an award unjust," *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam), a prevailing Title VII defendant is not entitled to attorneys' fees unless we determine that the plaintiff's claim was frivolous, unreasonable, or groundless. *Compare Fogerty v. Fantasy, Inc.*, —— U.S. ——, ——, 114 S.Ct. 1023, 1028, 127 L.Ed.2d 455 (1994) (holding that courts must treat prevailing plaintiffs and prevailing defendants alike in awarding attorneys' fees under the Copyright Act because the policies present in Title VII cases, as articulated by *Christiansburg*, are absent in copyright cases).

■ In distinguishing between prevailing Title VII plaintiffs and prevailing Title VII defendants, the Supreme Court has articulated several policies which section 706(k) promotes. Foremost among these policies is to encourage the vigorous enforcement of rights protected under Title VII in part by " 'mak[ing] it easier for a plaintiff of limited means to bring a meritorious suit.' " *Christiansburg*, 434 U.S. at 420, 98 S.Ct. at 699 (quoting remarks of Senator Humphrey, 110 Cong.Rec. 12724 (1964)). Thus, Congress chose the Title VII plaintiff as the means by which to enforce equal employment opportunities. *Id.* at 418, 98 S.Ct. at 698 (quoting *Piggie Park*, 390 U.S. at 402, 88 S.Ct. at 966 ("private attorney generals")). Along these lines, an award of attorneys' fees to prevailing Title VII plaintiffs is also a means by which Congress can punish employers who violate federal law and encourage the vindication of federal rights which might remain unenforced because of a plaintiff's lack of resources and the small size of expected recovery. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 1, 2–3 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910–11 ("civil rights laws [including Title VII] depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain"); *Powell v. Georgia–Pacific Corp.*, 843 F.Supp. 491, 496 (W.D.Ark.1994) ("Title VII also represents a policy that Congress considered to be of the highest priority and as such has a definite deterrent effect").

These equitable considerations, which support a broad definition of prevailing Title VII plaintiff, are absent in the case of the prevailing Title VII defendant. Therefore, "more rigorous standards apply for fee awards to prevailing defendants than to prevailing plaintiffs in Title VII cases." *Davis v. City of Charleston*, 917 F.2d 1502, 1504 (8th Cir. 1990); *Witzsche v. Jaeger & Haines, Inc.*, 707 F.Supp. 407, 410 (W.D.Ark.1989) (noting the distinction between prevailing Title VII plaintiffs and prevailing Title VII defendants for purposes of fee-shifting). Indeed, "the Supreme Court has declared that a prevailing defendant is entitled to attorney's fees only in very narrow circumstances." *Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1248 (7th Cir.1985) (citing *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. at 700–01;

*Witzsche,* 707 F.Supp. at 407 n. 2 (noting that the Eighth Circuit only awarded attorneys' fees to a prevailing defendant *once* in all the civil rights cases that the Eighth Circuit reviewed through 1989; and in that one case, the court only awarded a small portion of the fees claimed.)) For example, a court may not award attorneys' fees solely because the plaintiff did not prevail. *See Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. at 700–01; *Chester v. St. Louis Hous. Auth.,* 873 F.2d 207, 209 (8th Cir.1989). In fact, "[s]o long as the plaintiff has 'some basis' for the discrimination claim, a prevailing defendant may *not* recover attorneys' fees." *EEOC v. Kenneth Balk & Assocs., Inc.,* 813 F.2d 197, 198 (8th Cir.1987) (emphasis added).

■ While we are mindful that a rule which grants attorneys' fees more readily to prevailing plaintiffs than to prevailing defendants might, if unfettered, open the floodgates to vexatious or groundless litigation, the *Christiansburg* rule is not unfettered. Rather, as we stated above, under *Christiansburg,* a court may award attorneys' fees to a prevailing Title VII defendant when the "court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg,* 434 U.S. at 422, 98 S.Ct. at 701. This standard strikes an appropriate balance between the dual policy considerations underlying section 706(k): To discourage the litigation of frivolous, unreasonable, groundless, or vexatious claims, but without discouraging the rigorous enforcement of federal rights under Title VII.

### b. Lessons Distilled From *Christiansburg*

In summary, under *Christiansburg,* courts may award attorneys' fees to prevailing Title VII plaintiffs except under special circumstances, but may not award attorneys' fees to prevailing Title VII defendants except in narrow circumstances. The policies which support this rule are two-fold: To encourage the rigorous enforcement of certain federal rights, but also to protect innocent defendants from frivolous, unreasonable, groundless, or vexatious lawsuits. Another way of

viewing these two-fold policies is to examine the dual-role of the courts in enforcing civil rights. On the one hand, courts must decide specific cases and controversies. This conception shapes the role of the judiciary in an adversarial system. On the other hand, we look to the courts to articulate public policy. This conception of the role of the judiciary looks beyond the litigants to the effect the judicial decision has on future litigants. *See* Owen M. Fiss, *The Bureaucratization of the Judiciary,* 92 Yale L.J. 1442, 1443 (1983) ("Judges are entrusted with power because of their special competence to interpret public values embodied in authoritative texts, and this competence is derived from the process that has long characterized the judiciary and that limits the exercise of its power").

In *Christiansburg,* the Court struck a balance between these two conceptions of its role. The predominant rationale given for distinguishing between prevailing Title VII plaintiffs and defendants promotes a conception of the role of the judiciary to articulate and enforce public policy; in this case, the policy is to encourage the private enforcement of certain federal rights, Keith N. Hylton, *Fee Shifting and Incentives To Comply With The Law,* 46 Vand.L.Rev. 1069, 1104 (1993), especially in cases where the plaintiffs have limited access to resources, which is common in the case of individuals who have lost their jobs on account of workplace discrimination. The secondary rationale given for distinguishing between prevailing Title VII plaintiffs and defendants is better viewed through the adversarial conception. While the *Christiansburg* Court emphasizes the public policy conception of its role, it is mindful of its role in the adversarial system. The Court understood that even in promoting the public policy articulated by Congress, it should not trample upon the rights of innocent defendants to be free from frivolous, unreasonable, or groundless litigation. Therefore, it permits an award of attorneys' fees to prevailing Title VII defendants, but only in circumstances where the plaintiff has filed a frivolous, unreasonable, or groundless law suit. In this way, the courts promote the public policy articulated by Congress without trampling upon the rights of innocent defendants.

### 2. *Farrar:* Defining Prevailing Plaintiff In Light of the Lessons Learned From *Christiansburg*

We may not use the *Farrar* rule, which defines a prevailing plaintiff under 42 U.S.C. § 1988, to define positively a prevailing Title VII defendant, but we may look to its analysis.

In *Farrar*, the Court re-examined three recent civil rights attorneys' fees decisions to refine the definition of a prevailing civil rights plaintiff under 42 U.S.C. § 1988. *Farrar*, —— U.S. at ——–——, 113 S.Ct. at 572–73 (discussing *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); *Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). In *Farrar*, the Court was confronted with the case of a plaintiff who won nominal damages under section 1988; a plaintiff whom Justice O'Connor characterized with, "[i]f ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar," *Farrar*, —— U.S. at ——, 113 S.Ct. at 575 (O'Connor, J., concurring). Given this factual scenario, the Court rejected in part the *Garland* conception of prevailing party as underinclusive: "[A] technical victory may be so insignificant . . . as to be insufficient to support prevailing party status." *Garland*, 489 U.S. at 792 [109 S.Ct. at 1493]. According to the Court, even a technically victorious plaintiff would be a prevailing party for purposes of section 1988. "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award under *Hensley v. Eckerhart*, 461 U.S. 424 [103 S.Ct. 1933, 76 L.Ed.2d 40] (1983)." *Farrar*, —— U.S. at ——, 113 S.Ct. at 574. Thus, the Court held that a plaintiff who received nominal civil rights damages is a prevailing party under section 1988, but is not necessarily entitled to attorneys' fees because, under section 1988,

prevailing parties are entitled only to *reasonable* attorneys' fees. The nominal damage award is a factor to consider in determining the reasonableness of such fee awards, but not a factor in determining the prevailing status of the *plaintiff*. As Justice O'Connor explains in her concurrence, "when a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorney's fees. . . . As a matter of common sense and sound judicial administration, it would be wasteful indeed to require that courts laboriously and mechanically go through those steps when the *de minimis* nature of the victory makes the proper fee immediately obvious. Instead, it is enough for a court to explain why the victory is *de minimis* and announce a sensible decision to 'award low fees or no fees' at all." *Farrar*, —— U.S. at ——, 113 S.Ct. at 576 (O'Connor, J., concurring).

In summary, the *Farrar* Court delineated the extreme contours of what constitutes a prevailing civil rights plaintiff for purposes of fee-shifting. These contours are meant to be extreme because, under the broad, policy-oriented, *Christiansburg* definition, a prevailing plaintiff is entitled to attorneys' fees except under very special circumstances. Justice Thomas, writing for the *Farrar* majority, granted "prevailing party" status to even the "technical" civil rights plaintiff victor. Notably, the dissenting opinion agrees with this definition of "prevailing party." *Farrar*, —— U.S. at ——, 113 S.Ct. at 579 ("Because Farrar won an enforceable judgment against respondent, he has achieved a 'material alteration' of their legal relationship . . . and thus he is a 'prevailing party' under the statute") (citation omitted). And, although Justice O'Connor joined with the majority, she wrote separately to explain why "[p]recedent confirms what common sense suggests." *Farrar*, —— U.S. at ——, 113 S.Ct. at 576 (O'Connor, J. concurring). She suggested that the Court could not rule in favor of a plaintiff who can be said to have prevailed on technical grounds but does not fit the profile of the plaintiff for whom Congress chose to benefit from fee-shifting. *Id.* at ——, 113 S.Ct. at 577 (O'Connor, J., concurring) ("although Congress did not intend to restore

every detail of pre-*Alyeska* practice ... the practice of denying fees to pyrrhic victors is one it clearly intended to preserve") (citing *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 91, 111 S.Ct. 1138, 1143, 113 L.Ed.2d 68 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Soc.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (holding that each party must bear its own fees unless Congress specifically adopts a rule to the contrary) (superseded by various Civil Rights fee-shifting statutes)).

This very definition of what constitutes a prevailing plaintiff falls within both the adversarial and the public policy conception of the role of the judiciary. By adopting a definition of prevailing plaintiff as one who achieves a material alteration of the legal relationship among the parties, the Court recognizes that the parties are adversarial and that a judicial determination of the issues will alter the legal relationship among these parties. On the other hand, by adopting such a broad definition of prevailing plaintiff, the courts have the power and latitude to award attorneys' fees to many more plaintiffs especially in circumstances where the courts might feel that such plaintiffs have succeeded in their role as "private attorney general," but have not had a full-blown trial on the merits. *See, e.g., Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980) (prevailing plaintiff status accorded to a plaintiff who obtained relief comparable to judicial relief on the merits of his/her claim through a consent decree or settlement).

While a wholesale importation of the *Farrar* "material alteration of the legal relationship among the parties" definition of prevailing plaintiff into a definition for prevailing defendant comports with the adversarial conception of the judicial role as fee-shifters, it does not comport with the dominant, public policy conception. Under such a test, the Union would technically be a prevailing party because Marquart's voluntary dismissal of her complaint *with prejudice* materially altered the legal relationship between her and the Union to the benefit of the Union. We believe, however, that the Supreme Court would expressly disapprove of such a test because it has had the opportunity to adopt a general definition of prevailing party several times and has chosen not to do so. Had it wished to adopt such a general definition it probably would have done so. Instead, the Supreme Court has interpreted section 706(k) as mandating separate standards for prevailing Title VII plaintiffs and prevailing Title VII defendants. Thus, the *Farrar* definition of prevailing plaintiff cannot be transformed into a definition for prevailing party in general. We must, however, keep in mind the twin policies promoted by fee-shifting in civil rights cases: To encourage the vigorous enforcement of federal rights without encouraging frivolous, unreasonable, or groundless litigation.

### 3. Defendants Awarded Attorneys' Fees In The Eighth Circuit

■ A survey of the Eighth Circuit's most recent decisions awarding attorneys' fees to "prevailing defendants" in civil rights cases reveals that this Circuit has been unwilling to award attorneys' fees where the defendant is unable to *prove* that the plaintiff's case is meritless. *E.g., Davis,* 917 F.2d at 1505 ("to prevail on their requests for attorney's fees, the defendants *must show* that the evidence provided a basis for well-supported findings that the suit is frivolous, unfounded, and vexatiously brought and pursued") (internal quotation marks omitted) (emphasis added) (quoting *Davis v. City of Charleston,* 827 F.2d 317, 322 (8th Cir.1987) (other citations omitted)); *Keene Corp. v. Cass,* 908 F.2d 293, 298 (8th Cir.1990) ("To be a prevailing party [for purposes of § 1988], a party must succeed on some claim or significant issue in the litigation which achieves some benefit the parties sought.... Where a complaint has been dismissed for lack of subject matter jurisdiction, the [d]efendant has not prevailed over the plaintiff on any issue central to the merits of the litigation") (internal quotation marks and citations omitted); *Grant v. Farnsworth,* 869 F.2d 1149, 1152 (8th Cir.) ("Under section 1988 a prevailing party defendant may be awarded attorney fees if the defendant *proves* that the action against him was 'frivolous, unreasonable, or without foundation,' ") (emphasis added), *cert. denied,* 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 202

(1989); *American Family Life Assurance Co. v. Teasdale,* 733 F.2d 559, 569 (8th Cir. 1984) (district court awarded section 1988 attorneys' fees to a defendant, after a jury trial; court based its decision on *well-supported findings* that the plaintiff's suit was frivolous, unfounded and vexatiously brought and pursued). Where there are disputed issues of fact, it is necessarily impossible to prove that a plaintiff's case is meritless shy of a full-blown trial on the merits which might reveal that the plaintiff's case was "without foundation." Where there are no disputed issues of fact, and where the defendant has moved the court for summary judgment as a matter of law, however, the defendant may also be able to prove that a plaintiff's claim was frivolous, unreasonable, or groundless.

■ In short, returning to the merit prong of the *Christiansburg* test, at the very least, a prevailing defendant must prove that a plaintiff's case is frivolous, unreasonable, or groundless. This prong, together with the above analysis, helps to define prevailing defendant because proof that a plaintiff's case is frivolous, unreasonable, or groundless is not possible without a judicial determination of the plaintiff's case on the merits. *Keene,* 908 F.2d at 298. At the very least, this means that the Union must have made a motion for summary judgment on the merits. *Compare Keene,* 908 F.2d at 298 (defendant not a prevailing party where the court dismissed the claim for lack of subject matter jurisdiction) and *Chester,* 873 F.2d at 209 (defendant not awarded attorneys' fees where claims were dismissed on *res judicata* grounds); *with Hoover v. Armco, Inc.,* 915 F.2d 355, 357 (8th Cir.1990) (defendant awarded attorneys' fees where complaint dismissed because time-barred *and* plaintiff continued to assert time-barred claims after they were dismissed), *cert. denied,* 499 U.S. 961, 111 S.Ct. 1585, 113 L.Ed.2d 650 (1991).

In this case, Marquart voluntarily withdrew her complaint with prejudice prior to a judicial determination on the merits. We emphasize that there is not a scintilla of evidence that Marquart voluntarily withdrew her complaint to escape a disfavorable judicial determination on the merits. So far as

appears, Marquart's decision to withdraw her complaint voluntarily was a matter of litigation strategy. It is often very difficult to prove hostile work environment cases. The decision to withdraw a complaint with prejudice and to pursue state law claims instead is a legitimate litigation strategy. Marquart "should not be penalized for doing precisely what [s]he should have done. To award attorney's fees under these facts would undermine the direction of Congress that private Title VII plaintiffs are the chosen instrument for the enforcement of the civil rights laws.... The court would create a disincentive to the enforcement of civil rights laws if Title VII plaintiffs were required to risk attorney's fees upon discovery that [the case] posed insurmountable problems of proof." *Westmoreland v. J.I. Case Co.,* 714 F.Supp. 397, 398 (E.D.Wis.1989).

**4. Summary**

In summary, we will grant prevailing party status to a Title VII defendant only in very narrow circumstances. To obtain prevailing party status, a defendant must be able to point to a judicial declaration to its benefit. This might be an order granting a defendant's motion for summary judgment on the merits. Therefore, to determine whether the district court was correct to award attorneys' fees in this case, we first must determine whether the Union was a prevailing party for purposes of section 706(k). If, as a matter of law, the Union was a prevailing party for such purposes, then we must determine whether Marquart's claim was "frivolous, unreasonable, or groundless."

**C. Analysis**

**1. Prevailing Party**

■ As we discussed in section III.B.3. of this opinion, the Union was not a prevailing party for purposes of section 706(k).

**2. Merits of the Claim**

We need not discuss whether Marquart's claim was "frivolous, unreasonable, or groundless" because we hold that, as a matter of law, the Union was not a prevailing party under section 706(k). Nevertheless,

we find it useful to go through the merit prong of the analysis because this is the first time this Circuit has laid out the definition of "prevailing defendant."

■ To make out a claim of sexual harassment, the plaintiff must demonstrate that "(1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on [gender or] sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [the defendant] knew or should have known of the harassment and failed to take proper remedial action." *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993) (internal quotation marks and citations omitted). Because Marquart voluntarily withdrew her complaint, we have only the complaint and discovery documents to determine whether the claim was frivolous, unreasonable, or groundless. Marquart's complaint makes out a prima facie case of discrimination, and therefore, her claim cannot be said to be frivolous, unreasonable, or groundless. Marquart is (1) a member of a protected group. She alleged and continued to allege throughout discovery that various male employees and union members (2) harassed her (3) because she was a woman, and that (4) the harassment affected her conditions of employment by creating a hostile work atmosphere. Finally, Marquart alleged that (5) the Union knew about this harassment but refused to process her complaint because the individuals who harassed her were favored male members of the Union.

■ In characterizing Marquart's claim as "without foundation," the district court resorted to two arguments. First, the court stated that Marquart's failure to allege "that the grievances of male union members received more favorable treatment than [Marquart]'s grievance" was significant to its determination that her claim was "without foundation." Yet, Marquart did allege that her male counterparts were treated more favorably. Her claim is that the Union refused to process her sexual harassment complaint, although it did process the complaints (not based on sexual harassment) of her male colleagues. Such treatment, if proven, violates Title VII. *Carter v. United Food &*

*Commercial Workers*, 963 F.2d 1078, 1082 (8th Cir.1992). More importantly, as we stated in the background section of this opinion, Marquart need not have alleged that male union members received more favorable treatment for Marquart to establish a prima facie case. Instead, under Title VII, Marquart need only have alleged that the Union "cause[d] or attempt[ed] to cause an employer to discriminate against [her]." 42 U.S.C. § 2000e–2(c)(3). If the Union refused to process the sexual harassment complaints of its male and its female members, the Union would still violate Title VII because a union may not help or encourage its employer to discriminate. *See Goodman*, 482 U.S. 656, 669, 107 S.Ct. 2617, 2625 (" 'A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under both Title [VII] and § 1981, regardless of whether, as a subjective matter, its leaders were favorably disposed toward minorities' ") (quoting *Goodman*, 580 F.Supp. at 1160 (interpreting Title VII on the issue of *racial* harassment)); *see also Martin v. Int'l Ass'n of Machinists and Aerospace Workers*, 859 F.2d 581, 584 (8th Cir.1988) (noting that *Goodman* leaves open the question whether "acquiescence" is enough to establish union liability under Title VII). Thus, a claim that a union helped an employer to discriminate by failing to process such complaints cannot possibly be frivolous.

The court then suggested that even if Marquart could have proved the first four elements of a sexual harassment suit, she could not have proved that the Union knew about this harassment but refused to process her complaint as part of a conspiracy between the Union and McDonnell Douglas. The Union relies on *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650 (8th Cir.1989) to support this proposition. Under *City of Omaha*, to establish the existence of a civil rights conspiracy under section 1985(3), the plaintiff must prove that the defendants did (1) conspire . . . (2) for the purpose of depriving, either direct-

ly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.... that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of [the] conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States.

*City of Omaha*, 883 F.2d at 652 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971) (internal quotation marks omitted)). We find the district court's reliance on *City of Omaha* to be misplaced. This is not a section 1985(3) conspiracy case, but a Title VII case. The standards under section 1985(3) are different from those under Title VII. Whereas some sort of animus is necessary under section 1985(3), *Bray v. Alexandria Women's Health Clinic*, — U.S. ——, ——, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993), animus is not necessary to prove certain violations of Title VII. And section 1985(3) requires a conspiracy; Title VII does not.

The Union's attempt to bolster this part of the district court's opinion by relying on Justice Powell's dissent in *Goodman*, 482 U.S. at 688–89, 107 S.Ct. at 2635–36 (Powell, J., dissenting in Part II) is also misplaced. Writing for the majority, Justice White intentionally left open the question whether union passivity in the face of employer discrimination renders the union liable under Title VII because under the facts of that case, "the evidence prove[d] 'far more' than mere passivity." *Goodman*, 482 U.S. at 666, 107 S.Ct. at 2623 (White, J., majority). Therefore, Marquart's allegations are "far from" frivolous under *Goodman*.

### 3. Discretion

This is the third part of the inquiry. Only if we had found that the Union was a prevailing party under section 706(k), and that Marquart's claim was frivolous, unreasonable, or groundless would we then look to the district court's decision to determine whether it had abused its discretion. We need not review whether the district court abused its

discretion because we have held that, as a matter of law, the court was incorrect to award attorneys' fees to the Union.

### IV. *Conclusion*

For the foregoing reasons, we reverse the district court's judgment granting, in part, the Union's application for attorneys' fees.