# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3687

———————

Raymond Dillon,     *

               *

       Appellant,     *

               *    Appeal from the United States

      v.            *    District Court for the

               *    District of Nebraska.

Brown County, Nebraska; Greg     *

McBride; James L. Huckabay, Sr.,     *

               *

       Appellees.     *

———————

Submitted: April 12, 2004
Filed: August 23, 2004

———————

Before MORRIS SHEPPARD ARNOLD, RILEY, and COLLOTON, Circuit
    Judges.

———————

COLLOTON, Circuit Judge.

Raymond Dillon appeals the district court's[1] adverse grant of summary judgment in his civil rights lawsuit arising out of a motor vehicle accident. Appellees Brown County, Greg McBride, and James Huckabay cross-appeal the district court's refusal to award their attorney's fees and expenses. We affirm.

———————

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

# I.

Raymond Dillon visited his mother, Patti Kaiser, at her home in rural Brown County, Nebraska, on July 5, 2000. He was accompanied by his friend, Kristi Willard, and her four children. Dillon had been drinking alcohol throughout the day, and had allegedly stolen a bottle of whiskey from a convenience store in Rock County, Nebraska, on the way to his mother's residence. During the visit to his mother's, Dillon took Willard out on a three-wheel all-terrain vehicle (ATV), driving around his mother's property and the surrounding roads and land. While Dillon and Willard were out on the ATV, Brown County Sheriff Greg McBride was traveling to the Kaiser home, accompanied by Deputy Sheriff James Huckabay. The two were responding to a report regarding Dillon's alleged shoplifting in Rock County, a report regarding stolen license plates on the car Dillon was driving, and a request from Kaiser that Dillon be removed from her property.

Prior to arriving at the residence, McBride and Huckabay met with Sergeant Bruce Papstein and Trooper Paul Hagen of the Nebraska State Patrol, who were driving separate vehicles. The three vehicles proceeded to Kaiser's residence, where the officers were informed by Kaiser and her husband that Dillon had been out riding on the ATV with Willard, and had not returned. Huckabay, Hagen, and McBride searched for Dillon on the Kaiser property, and soon received a call from Papstein, who stated he had spotted Dillon on the ATV driving towards the Kaiser property. Hagen got into his vehicle, and McBride and Huckabay entered the Brown County Sheriff's Department vehicle, a Chevy Blazer, with Huckabay at the wheel.

While looking for Dillon, the three law enforcement vehicles drove onto the property of a small manufacturing company. Huckabay and McBride were in the last vehicle to enter the property, and took a different route than Papstein and Hagen. Huckabay drove the Blazer in the general direction of a building on the property, as both he and McBride believed that Dillon had been stopped behind the building.

Dillon and Willard then appeared from behind the building on the ATV, and began driving in the direction of the Blazer.

The two vehicles continued on a path toward each other for some distance. Exactly what happened next is disputed, but it is certain that the Blazer and the ATV collided, throwing Dillon and Willard to the ground. McBride and Huckabay both estimated that there were approximately five seconds between the time Dillon came around the building and when the collision occurred; Dillon believed there were about eight seconds; Hagen said ten. Following the collision, McBride and Huckabay provided medical attention to Dillon and Willard. Dillon suffered a number of injuries as a result of the collision, the most serious of which was a compound fracture to his lower left leg.

Dillon brought suit in district court against Brown County, Nebraska, and Huckabay and McBride in their official capacities only. The only claim at issue on Dillon's appeal sought relief under 42 U.S.C. § 1983. Dillon alleged that his constitutional rights were violated by the grossly negligent actions of Brown County in failing to supervise and investigate complaints against the sheriff's department. Dillon also alleged that McBride was grossly negligent in disregarding established pursuit policies and failing to supervise Huckabay.

The district court, citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998), held that Dillon's constitutional claim did not arise under the Fourth Amendment, because a police pursuit or an unintentional collision does not amount to a "seizure." The district court then held that "[t]o the extent that plaintiff's claim could be construed as asserting a violation of substantive due process rights under the Fourteenth Amendment," it also failed. The court observed that *Lewis* requires a plaintiff to show that police who are engaged in a high-speed chase acted with an "intent to harm" in a way that "shocks the conscience." Because Dillon alleged only gross negligence by the officer, the district court concluded that he failed to satisfy

the standard for a claim based on the Fourteenth Amendment, and granted summary judgment in favor of the County and McBride.

Dillon appeals the dismissal of his claim, and the County, Huckabay, and McBride cross-appeal the district court's refusal to award them attorney's fees and expenses pursuant to 42 U.S.C. § 1988. We review a district court's grant of summary judgment *de novo*, construing the record in the light most favorable to Dillon. *Murphey v. City of Minneapolis*, 358 F.3d 1074, 1077 (8th Cir. 2004). We will affirm the grant of summary judgment if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review a district court's refusal to award attorney's fees and expenses under 42 U.S.C. § 1988 for abuse of discretion. *Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 328 (8th Cir. 1999).

II.

The parties agree that application of the Supreme Court's decision in *Lewis* is the key to resolving this case. In *Lewis*, a sheriff's deputy engaged in a high speed pursuit with a motorcycle. When the driver of the motorcycle made a sharp turn, his passenger fell off. The pursuing deputy could not stop in time, and hit the passenger, who was pronounced dead at the scene. *Lewis*, 523 U.S. at 836-37. The Supreme Court rejected the claims of the passenger's family that the decedent's substantive due process rights had been violated. *Id.* at 836. The Court stated that a "cognizable level of executive abuse of power [is] that which shocks the conscience," *id.* at 846, and that police behavior in high speed pursuits only rises to that level when there is "a purpose to cause harm unrelated to the legitimate object of arrest." *Id.* at 836. We later held that *Lewis* applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender. *Helseth v. Burch*, 258 F.3d 867, 871 (8th Cir. 2001) (en banc).

-4-

On appeal, Dillon continues to assert that the police acted with "gross negligence," but contends that this lower standard of culpability is sufficient to establish a substantive due process violation under the circumstances of this case. Dillon argues that *Lewis* is distinguishable because (1) "high speeds were not a factor" in Dillon's collision (the deputy says he was driving 20 to 30 miles per hour), and (2) the officers did not intend to make an arrest of Dillon or his companion. Dillon also relies on the Supreme Court's statement in *Lewis* that while

> liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process, . . . [w]hether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, *such as recklessness or gross negligence*, is a matter for closer calls.

523 U.S. at 849 (emphasis added) (citation and internal quotation omitted).

Although *Lewis* involved a high-speed chase designed to effectuate an arrest, we agree with the district court that the principles underlying *Lewis* extend beyond that precise factual situation. *Lewis* concluded that "when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." *Id.* at 853 (internal quotation omitted). The Court questioned whether "it makes sense to speak of indifference as deliberate in the case of sudden pursuit," *id.* at 851, and contrasted rapidly developing police activity with the "markedly different circumstances of normal pretrial custody," during which deliberate indifference to the medical needs of detainees may "shock the conscience." *Id.* at 850-51 (citing *Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997)). The Court's analysis, moreover, was informed by its traditional "reluctan[ce] to expand the concept of substantive due process." *Id.* at 842 (quotation omitted); *see also Helseth*, 258 F.3d at 871.

In practice, therefore, the "intent to harm" standard has not been confined to high-speed police chases aimed at apprehending a suspect. *Lewis* itself relied on the Court's previous holding that "intent to harm" (rather than deliberate indifference) was required to establish a constitutional violation in the case of injuries caused during a prison riot, even though the disturbance spanned a period of two hours, because "actual deliberation" in the constitutional sense was not possible. 523 U.S. at 851 & n.11 (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). The competing obligations of prison guards, and the Court's "hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance," counseled against the imposition of liability for anything less than force applied "for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (quotation omitted).

Our court, too, has applied the "intent to harm" standard in other contexts. In *Neal v. St. Louis County Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir. 2000), we rejected application of a "deliberate indifference" or "recklessness" standard under the Fourteenth Amendment where a police officer accidentally shot a fellow officer during a shootout with an armed suspect. We concluded that "in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation, a state actor's action will shock the conscience only if the actor intended to cause harm." *Id.* More recently, in *Golden ex rel. Balch v. Anders*, 324 F.3d 650 (8th Cir. 2003), we interpreted *Lewis* in the context of a claim brought against a high school principal who forcefully restrained a sixth-grade student after he violently kicked a vending machine and resisted efforts of a teacher to settle him down. We reasoned that while the principal "was in neither a high-speed chase nor an exchange of gunfire," he was required to make an "instant judgment" about how to quell the immediate danger posed by the student. *Id.* at 654 (quoting *Lewis*, 523 U.S. at 853). Applying *Lewis*, we held that the plaintiff could establish a violation of substantive due process only by showing that the principal maliciously and sadistically injured the student. *Id.*; *see also Radecki v. Barela*, 146 F.3d 1227, 1232 (10th Cir. 1998)

("intent to harm" standard applied where deputy sheriff was required to make "instantaneous judgment call" when man tried to grab deputy's firearm).

It is undisputed that the officers in this case were confronted with a rapidly developing situation that arose quickly after their arrival on the property of the manufacturing plant. Whether or not they technically were in "pursuit" of Dillon for purposes of Nebraska law, or whether they intended to make a formal arrest, there is no doubt that the officers were seeking to make investigative contact with Dillon concerning the alleged shoplifting and stolen license plates, and in response to the complaints from Dillon's mother. All agree that when Dillon appeared on the ATV from behind a building, the officers were afforded no more than ten seconds to react to the approaching vehicle. That the officers may have been driving at "medium-speed" rather than "high-speed" is not a constitutionally significant distinction. We believe the scenario plainly qualifies as a "rapidly evolving, fluid, and dangerous situation[]," rather than one which allows for "calm and reflective deliberation," *Neal*, 217 F.3d at 958, and that the plaintiff must show an intent to harm in order to establish a violation of substantive due process. Dillon makes no allegation that the officers acted with the requisite intent, so the district court was correct to grant summary judgment. Because Dillon has no viable constitutional claim against the individual officers, his claim against the County for alleged failure to supervise or investigate fails as well. *Id.* at 959.

III.

On cross-appeal, the County, Huckabay, and McBride argue that the district court erred in not awarding them attorney's fees pursuant to 42 U.S.C. § 1988. Section 1988(b) provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." A prevailing defendant may recover fees if the plaintiff's suit was "frivolous, unreasonable, or groundless." *Marquart v. Lodge 837*, 26 F.3d 842, 852 (8th Cir. 1994). We review the district

court's decision on this point for abuse of discretion. *Id.* at 854. The district court found that while Dillon's claims were not artfully pleaded, they were not frivolous, unreasonable, or groundless, and the court denied appellees' motion for attorney's fees. Bearing in mind that courts should "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation," *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978), we find no abuse of discretion in the district court's order.

\* \* \*

The judgment of the district court is affirmed.

_____