# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3316

_____

Christine M. Madrigal,

          Appellant,

v.

Kline Oldsmobile, Inc.,
a Minnesota corporation,

          Appellee.

\*    Appeal from the United States
\*    District Court for the
\*    District of Minnesota.

_____

Submitted:  June 22, 2005
Filed:  September 12, 2005

_____

Before RILEY, BOWMAN, and BENTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Christine Madrigal appeals from an order of the District Court[1] granting summary judgment in favor of Kline Oldsmobile, Inc., on Madrigal's claim that Kline violated the Equal Credit Opportunity Act (ECOA or Act) by failing to properly notify her of its reasons for taking adverse action on her application for credit. We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Madrigal heard a radio advertisement stating that Kline, a seller of new and used vehicles, was offering financing at a 1.9% annual percentage rate (APR) to qualified buyers. On August 10, 2002, Madrigal visited Kline and selected a 2002 Suzuki XL-7 that she wished to buy on credit. Kline agreed to accept Madrigal's Dodge Caravan as a trade-in, although Madrigal owed Chrysler Financial approximately $5,800 more than the Caravan was worth. To offset the negative equity of the trade, Kline increased the price of the Suzuki. Madrigal made a down payment of $1,620 and sought credit for the remainder of the Suzuki's purchase price.

The parties executed a "Retail Installment Contract and Security Agreement" (RIC) under which Madrigal would have financed $30,500 at a 1.9% APR and been obligated to make monthly payments of $448 over a seventy-two-month term. The RIC included a section titled "Assignment," wherein Kline contemporaneously assigned its rights under the RIC to Bank One. The parties also executed a "Conditional Delivery Agreement Addendum to Installment Contract," which expressly conditioned the sale of the Suzuki upon Bank One or another lender accepting the assignment.

Bank One did not accept the assignment, and Kline was unable to arrange financing with another lender under like financing terms. Kline requested that Madrigal return the vehicle to the dealership, which she did on August 31, 2002. During that visit to the dealership, Madrigal expressed her continued interest in purchasing the Suzuki, even if under less-favorable credit terms. The parties executed a new RIC under which Madrigal would have financed $26,800 at a 5.49% APR and been obligated to make monthly payments of $438 over a seventy-two-month term. Via the "Assignment" section of this RIC, Kline contemporaneously assigned its rights under the RIC to Twin City Co-Op Federal Credit Union (Twin City). Madrigal once again left the dealership with the Suzuki.

At the time, Twin City had in place a special financing program wherein applicants with a credit score of at least 650 were "pre-approved" for 5.49% APR financing. In early September 2002, Twin City advised Kline that Madrigal's credit score did not exceed 650 and that she did not qualify for the 5.49% rate. On September 10, 2002, Kline obtained a new credit report for Madrigal that reflected a score of 660. Twin City then agreed to extend financing at the 5.49% rate, subject to proof of Madrigal's income. Kline telephoned Madrigal and advised her that Twin City had requested documentation of her income to use in its decision of whether to extend financing. On September 19, 2002, Madrigal faxed to Kline a copy of her pay stub reflecting a yearly income of approximately $28,000. Kline again telephoned Madrigal and informed her that Twin City would not extend financing unless she could document monthly receipt of $1,000 in Social Security income, as reported on her credit application. On October 3, 2002, Madrigal faxed to Kline a document reflecting monthly Social Security income of $545 for her son Brandon. Madrigal explained that the remaining Social Security benefits she had expected to receive for her son Benjamin had been denied.

Twin City declined to extend financing. In early October 2002, Kline contacted Madrigal and informed her of Twin City's decision. Madrigal indicated that she wanted to keep the Suzuki and finance it under the same monthly payment and APR contemplated in the August 31, 2002, RIC. Kline began to search for alternate financing, but could not find a lender willing to extend Madrigal credit at a 5.49% APR. Affinity Plus Credit Union (Affinity Plus) advised Kline that it would extend Madrigal credit at a 6.5% APR. In order to obtain the rate that Madrigal desired, Kline arranged to pay Affinity Plus to reduce the finance rate to 5.49% APR. Following this "buy-down," the terms of the Affinity Plus credit offer would have obligated Madrigal to make monthly payments of $435 over a seventy-two-month term. No additional proof of Madrigal's income was required.

When Kline telephoned Madrigal's home to inform her that it had arranged credit on terms nearly identical to the terms of the August 31, 2002, RIC, Madrigal's husband indicated that Madrigal had retained an attorney. Kline spoke with Madrigal's attorney in late October 2002; he indicated that Madrigal would either return to the dealership to sign the paperwork for the Affinity Plus financing or return the Suzuki. Madrigal did neither, and Kline eventually repossessed the Suzuki on January 13, 2003. On the date of repossession, Madrigal had driven the Suzuki over 8,000 miles.

In May 2003, Madrigal commenced this suit, bringing claims under the ECOA, the Truth in Lending Act, and various state statutory and common laws. The parties filed cross-motions for summary judgment. The District Court denied Madrigal's motion for summary judgment, granted Kline's motion for summary judgment on Madrigal's federal claims, declined to exercise supplemental jurisdiction over the state-law claims, and dismissed the case. Madrigal appeals only the District Court's entry of summary judgment on her claim under the ECOA.

In considering the District Court's grant of summary judgment, we review findings of fact for clear error and conclusions of law de novo. Royer ex rel. Estate of Royer v. City of Oak Grove, 374 F.3d 685, 687 (8th Cir. 2004). We will affirm if there are no genuine issues of material fact and if Kline, the moving party, is entitled to judgment as a matter of law. Dillon v. Brown County, Neb., 380 F.3d 360, 363 (8th Cir. 2004). We view the evidence in the light most favorable to Madrigal, the non-moving party, drawing all reasonable inferences in her favor. Peterson v. Scott County, 406 F.3d 515, 520 (8th Cir. 2005).

Madrigal's ECOA claim arises from Kline's actions in connection with the August 31, 2002, RIC. Madrigal asserts that Kline violated the ECOA "when[,] after making the decision to not extend credit to [Madrigal], [Kline] failed to provide a statement of reasons for adverse action." Complaint ¶ 75. The notification provision

of the ECOA provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2) (1998). Notification of the reasons for adverse action must be given in writing. Id. Under this provision, Kline would be liable to Madrigal if (1) Kline is a "creditor," (2) Kline took "adverse action" with respect to Madrigal's second credit application, and (3) Kline failed to provide Madrigal written notification of its reasons for adverse action. The parties devoted significant time in their briefs and oral arguments addressing whether Kline is a "creditor" as defined in the implementing regulations of the Act.[2] We need not decide this question, however, because we conclude that Kline—creditor or not—did not take adverse action on Madrigal's credit application. Having taken no adverse action, Kline had no obligation to provide written notification under the Act.

"Adverse action" is defined by the ECOA as "a denial or revocation of credit . . . or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6) (1998). The regulations likewise define the term, in relevant part, as "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application." 12 C.F.R. § 202.2(c)(1)(i) (2005). We agree with the District Court's conclusion that nothing in the record supports Madrigal's contention that Kline took adverse action by refusing to grant her credit. To the contrary, the record shows that Kline took significant steps to ensure that Madrigal was extended credit on the terms that she requested on August 31, 2002. First, when Twin City advised Kline that Madrigal's credit score was too low to qualify her for the 5.49% APR financing contemplated in the second RIC, Kline obtained a new credit report showing that Twin City was mistaken and that Madrigal's credit score qualified for the interest rate. Then, when Twin City

---

[2]Federal Reserve Regulation B, which implements the ECOA, defines "creditor" as "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 202.2(l) (2005).

requested documentation of Madrigal's income, Kline contacted Madrigal at least twice to obtain the same. When Twin City declined to extend financing, Kline quickly arranged alternate financing through Affinity Plus. To ensure that the Affinity Plus credit was offered on substantially the same terms set forth in the August 31, 2002, RIC, Kline agreed to pay Affinity Plus to provide financing at a 5.49% APR rather than a 6.5% APR. The Affinity Plus financing was offered over a seventy-two-month period with monthly payments of $435—"substantially the terms" requested of Twin City (although slightly *more beneficial* to Madrigal).[3] As noted by the District Court, "it was plaintiff, not defendant, who refused to go forward with the deal." Order of May 6, 2004, at 8.[4]

Madrigal argues that Kline took adverse action by "not approving credit within thirty days" of her application. Appellant's Br. at 1. This argument appears to be based on 15 U.S.C. § 1691(d)(1) (1998), which requires a creditor to "notify the applicant of its action on the application" within thirty days. The record indicates, however, that during the thirty days following Madrigal's completion of the August 31, 2002, RIC, Kline continuously apprised her of the action being taken on

---

[3]Additional steps taken by Kline further indicate that Kline did not consider Madrigal's application for credit denied. On September 11, 2002, Kline paid Chrysler Financial over $13,000 to satisfy the lien held on the Caravan that Madrigal traded in. The next day, Kline sent Madrigal a letter thanking her for her purchase of the Suzuki.

[4]The District Court held in the alternative that Kline could not have taken adverse action on Madrigal's credit application because Kline is not a licensed sales finance company under Minnesota law. See 12 C.F.R. § 202.2(c)(2)(iv) (2005) (stating that "adverse action" does not include a "refusal to extend credit because applicable law prohibits the creditor from extending the credit requested"). We need not reach the merits of this alternative holding.

her credit application.[5]  While Kline's communication with Madrigal during this time was oral, oral notification is sufficient when the action being taken is not adverse. See, e.g., 12 C.F.R. § 202.9(a)(2), (c)(3) (2005); 15 U.S.C. § 1691(d)(1), (d)(2) (1998).

The ECOA notification provision was enacted with the twin goals of discouraging credit discrimination and increasing consumer knowledge about credit status.  See S. Rep. No. 94-589, at 4 (1976), reprinted in 1976 U.S.C.C.A.N. 403, 406. Kline's actions in no way contravened these goals.  The District Court's summary judgment dismissing Madrigal's ECOA claim is affirmed.

_____

---

[5]In mid-September and early October 2002, Kline was in contact with Madrigal to gather information requested by Twin City to complete her application for credit.