**Joseph H. GREENIER, Plaintiff**

**v.**

**PACE, LOCAL NO. 1188, Defendant**

No. 01–CV–121–B–S.

United States District Court,
D. Maine.

April 23, 2002.

Joseph H. Greenier, Stockton Springs, ME, Pro se.

Jonathan S.R. Beal, Esq., Fontaine & Beal, P.A., Portland, ME, Defendant.

### ORDER

SINGAL, District Judge.

A former paper mill employee claims that his union discriminated against him on the basis of his disability and cooperated with his employer's discriminatory treatment of him, in violation of federal labor and civil rights laws. He appears pro se. Presently before the Court are Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) (Docket # 27); Plaintiff's Motions to Object to the Court's Orders of February 20, 2002 (Docket # 34), February 21, 2002 (Docket # 37), and March 7, 2002 (Docket # 40); and Plaintiff's Motion to Object to All Court Orders (Docket # 43). For the following reasons, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss; DENIES Plaintiff's Motions to Object to the Orders of February 20, February 21, and March 7; and STRIKES Plaintiff's Motion to Object to All Court Orders.

### I. MOTION TO DISMISS

#### A. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges the adequacy of the claims in a complaint. Fed.R.Civ.P. 12(b)(6); *Beegan v. AP*, 43 F.Supp.2d 70, 73 (D.Me.1999). The motion to dismiss is not an occasion to prove or disprove the facts in the Complaint. *Id.* Rather, the Court assumes that all facts alleged in the Complaint are true and makes all reasonable inferences from those facts in Plaintiff's favor. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Because Plaintiff represents himself pro se, the Court must be particularly generous in granting those inferences. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Dismissal is only proper when it is clear that even if all the facts in the Complaint are true, Plaintiff cannot recover on any viable legal theory. *Barrington Cove LP v. Rhode Island Housing & Mortgage Fin. Corp.*, 246 F.3d 1, 4–5 (1st Cir.2001).

In what has been characterized as a "seminal pleading case," *Winokur v. Office of Court Admin.*, No. CV 99–2518, 2002 WL 397657, *8 (E.D.N.Y. March 14, 2002), the Supreme Court recently reminded lower courts that, in order to survive a motion to dismiss, Plaintiff need only satisfy the simple requirements of Rule 8(a). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (citing Fed.R.Civ.P. 8(a)). The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Plaintiff is not required to plead facts supporting each and every element of his prima facie case. *Swierkiewicz*, 122 S.Ct. at 997. Rather, he need only plead enough facts to " 'give the [D]efendant fair notice of what [his] claim is and the grounds upon which it rests.' " *Id.* at 998 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))

The approach that the Supreme Court set forth in *Swierkiewicz* requires the Court to treat complaints more liberally than recently has been the practice of either this Court or the First Circuit. For

example, the First Circuit previously required plaintiffs to "set forth in their complaint 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery . . . .' " *Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 16 (1st Cir.1989) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). *Swierkiewicz* makes clear that a complaint that does not address itself to every element of every claim may nevertheless be adequate under Rule 8(a). In addition, where Defendant's improper intent is an essential element of a plaintiff's claim, the First Circuit has insisted upon *"specific, nonconclusory factual* allegations giving rise to a reasonable inference of . . . discriminatory intent." *Judge v. City of Lowell,* 160 F.3d 67, 75 (1st Cir.1998) (emphasis in original); *see also Aulson,* 83 F.3d at 3 (faulting plaintiffs for relying on bald assertions and unsubstantiated conclusions of law in setting forth their claims); *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52–53 (1st Cir.1990) (same). Yet *Swierkiewicz* clearly indicates that it is not fatal to Plaintiff's case that some of his allegations at this stage may be legal conclusions rather than facts. *Swierkiewicz,* 122 S.Ct. at 999; *see Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002) (reading *Swierkiewicz* to mean that "[a] complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts.").

■ To the extent that the Court is unable to reconcile pre-existing First Circuit precedent with the Supreme Court's holding in an intervening case, the Court must follow the dictates of the Supreme Court. *Cf. Stewart v. Dutra Constr. Co.,* 230 F.3d 461, 467 (1st Cir.2000) ("[P]rior circuit precedent will yield to a contrary decision of the Supreme Court. . . .") Therefore, the Court must review the Complaint guided not by the narrow question of whether it contains facts that, if true, could satisfy *every element* of an employment discrimination claim, but rather by the broader question of whether the Complaint contains enough information to put Defendant on notice of the nature of Plaintiff's claims

■ Ordinarily, in assessing Plaintiff's allegations, the Court may only consider facts listed in the Complaint.[1] Fed. R.Civ.P. 12(b)(6). If it takes into account facts in documents other than the Complaint, it must convert the Motion to Dismiss into a motion for summary judgment. *Id.* However, a narrow exception exists "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to the [Plaintiff's] claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). Here, Defendant attached several documents to its Motion to Dismiss, including correspondence between defense counsel and Plaintiff and records of two proceedings before the Maine Human Rights Commission (MHRC) and one proceeding before the National Labor Relations Board (NLRB).

■ Applying the *Watterson* exception, the Court will consider only two of the documents that Defendant submitted: (1) a charge of disability discrimination dated December 8, 1999, that Plaintiff submitted to the MHRC (*See* Def.'s Mot. to Dism. at Attach. C(5) (Docket # 27)); and (2) the related right-to-sue letter issued to Plaintiff on March 14, 2001 (*See id.* at Attach.

---

**1.** The additional facts that Plaintiff provided in his motion dated January 11, 2002, are deemed to be incorporated into the Complaint for purposes of this Motion. (*See* Pl.'s Mot. at 3–5 (Docket # 22).)

C(8) (Docket # 27)). Plaintiff's Complaint sufficiently refers to these two documents, and they are central to his claim that Local 1188 retaliated against him for asserting his federal rights. Furthermore, Plaintiff apparently does not challenge their authenticity: in fact, he submitted the MHRC charge himself in support of one of his earlier motions.[2] (*See* Mot. to Amend at Ex. A (Docket # 22).) These two documents, in conjunction with the Complaint construed liberally in Plaintiff's favor, describe the following course of events.

## B. Background

Plaintiff Joseph Greenier has been a member of the Paper, Allied–Industrial, Chemical and Energy Worker's International Union ("PACE") since 1974 and a member of Defendant PACE, Local No. 1188 ("Local 1188") since 1982. Greenier began working for Champion International/International Paper ("Champion") sometime prior to 1989. The collective bargaining agreement covering his employment prohibited discrimination against any employee. His worker's compensation records, personnel records, and pre-employment records, to which Local 1188 officials had access, reflected that he had both physical and mental disabilities.[3] Because of these disabilities, Champion assigned him to light-duty jobs.

In February and March 1997, Greenier informed the mill manager that he was experiencing harassment and discrimination at the mill. The Complaint does not specify the nature of the discrimination.

A few months later, Champion representatives made two allegations of criminal conduct against Greenier, which he claims were for the purpose of harassing him. On May 15, 1997, Champion personnel accused Greenier of taking property and threatened to terminate him, and on December 5, 1997, Champion and Local 1188 filed a police report containing unspecified false allegations against him.

At some point during 1997, Champion terminated Greenier's employment. The Complaint describes the ensuing events somewhat incompletely. However, it appears that Greenier grieved his termination, and the dispute proceeded to arbitration, at which Local 1188 represented him. Although Greenier was dissatisfied with the representation, in part because Local 1188 allowed Champion to select the arbitrator, he apparently prevailed. The arbitrator directed that he be allowed to return to work.

To Greenier's dismay, Duane Lugdon, Greenier's International Union Representative, refused to file a grievance or undertake court action to enforce the arbitrator's decision. Seven months passed. Finally, on April 8, 1999, Greenier participated in a meeting, the purpose of which was to plan Greenier's return to work. At the meeting, a Champion human resources manager appeared skeptical that Greenier suffered from disabilities as he claimed. He joked to Local 1188 officials, "Joe [Greenier] thinks he's disabled," and refused to provide Greenier with the name

Court notes that Plaintiff vehemently ꞏnges the accuracy of the MRHC investiꞏtor's report that Defendant also attached to its Motion. (*See* Pl.'s Mot. to Object at 1 (Docket # 34), objecting to Def.'s Mot. to Dism. at Attach. C(7) (Docket # 27).) Plaintiff's claims do not depend on this report, and it was not sufficiently referred to in the Complaint to come within the exception described in *Watterson*. Moreover, the Court's determination about whether the Complaint is legally sufficient is wholly independent of the MHRC investigator's findings. Consequently, the Court will not consider the investigator's report in ruling on the Motion to Dismiss.

3. The Complaint does not specify the nature of his disabilities.

of Champion's "ADA coordinator." (*See* Compl. at ¶ 20 (Docket # 1).)

On April 13, 1999, Greenier returned to work at the Champion mill. In early May 1999, Greenier's then-attorney sent a letter to Champion's attorney, Local President Jeffrey Snowman, and Lugdon alerting them to ongoing discrimination and retaliation against Greenier at the mill. None of them responded to the letter. Shortly thereafter, on June 11, 1999, Champion terminated Greenier's employment a second time. Greenier filed a charge of disability discrimination with the MHRC against PACE and Local 1188 on December 8, 1999.

The parties returned to arbitration on May 31, 2000. Local 1188 again allowed Champion to select the arbitrator. Furthermore, according to Greenier, Local 1188 acted to assist Champion in the arbitration and not to advance Greenier's interests. For example, when Champion requested certain records from Local 1188, Snowman provided the records the following day. Richard Holmes, vice president of Local 1188, likewise responded promptly to Champion's discovery requests. Meanwhile, Lugdon refused to subpoena the witnesses that Greenier sought. Greenier asked for an unbiased international representative or union attorney, but his request was denied.

Greenier received a right-to-sue notice from the EEOC on March 19, 2001. On June 15, 2001, he filed this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. On February 4, 2002, Local 1188 moved to dismiss the action in its entirety pursuant to Rule 12(b)(6).

## C. Discussion

Plaintiff suggests that the events he has described constitute violations of law under two legal theories: (1) a "hybrid" claim for Champion's breach of the collective bargaining agreement and the Defendant's breach of its duty of fair representation; and (2) a claim for violation of the Americans With Disabilities Act (ADA).[4]

### 1. "Hybrid" Claim Under LMRA

■■ First, Plaintiff claims that Defendant violated its duty of fair representation toward him by inadequately representing his interests in the grievance and arbitration process. Although Plaintiff characterizes his claim as one under the Fair Labor Standards Act, (FLSA), the Court agrees with Defendant that the federal labor statutes that better fit the facts alleged are the Labor–Management Relations Act, 29 U.S.C. § 141 et seq. (LMRA), and the National Labor Relations Act, 29 U.S.C. § 151 et seq. (NLRA). Because collective bargaining agents enjoy exclusive bargaining authority under section 9(a) of the NLRA, 29 U.S.C. § 159(a), they also bear a duty to be fair and impartial in representing the interests of employees in the bargaining unit they serve. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 73, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989); *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). A union breaches its duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190, 87 S.Ct. 903.

---

4. Plaintiff is also disgruntled that Local 1188 has denied him access to a variety of records. The Court understands this to be a discovery dispute rather than a distinct legal claim and accordingly does not address it here.

When an employee alleges that a union breached its duty of fair representation by failing to process his grievances, he may bring a so-called "hybrid" claim. *See Laurin v. Providence Hosp.,* 150 F.3d 52, 61 (1st Cir.1998). Hybrid claims typically pair two independent actions: (1) a claim that the employer breached the collective bargaining agreement, actionable pursuant to section 301 of the LMRA, 29 U.S.C. § 185; and (2) a claim that the union breached its duty of fair representation by inadequately addressing the company's breach. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

Defendant rightly asserts that the statute of limitations on a hybrid 301/duty of fair representation claim is six months. *James v. Georgia–Pacific Corp.,* 986 F.Supp. 34, 38 (D.Me.1997) (citing *DelCostello,* 462 U.S. at 169, 103 S.Ct. 2281). Plaintiff filed this action on June 15, 2001. The Complaint refers to no conduct by the Defendant that postdates December 15, 2000. Therefore, Plaintiff has alleged no conduct that falls within the limitations period for a hybrid 301/duty of fair representation claim, and Plaintiff is barred from obtaining legal relief under this theory even if all the facts in his Complaint are true.

### 2. ADA Claims

Plaintiff also asserts that both Defendant and Champion discriminated against him on the basis of his disability, in violation of the Americans with Disabilities Act (ADA). Plaintiff may only invoke the protections of the ADA if he is a "qualified individual with a disability." 42 U.S.C. § 12112(a). Without specifying either the nature of his disability or the job for which he was qualified, Plaintiff simply states that he is a "qualified individual with disabilities." (*See* Compl. at ¶ 24 (Docket # 1).) He supports this statement with an allegation that Defendant and Champion assigned him to light-duty work because of his disability, the nature of which is reflected in his employment records. Although largely conclusory, these claims suffice to alert Defendant that Plaintiff claims to be entitled to the protections of the ADA and thus satisfies the requirements of Rule 8(a).[5]

The ADA prohibits a "covered entity" from discriminating against qualified individuals with disabilities. 42 U.S.C. § 12112(a). "Covered entities" include employers and labor organizations. 42 U.S.C. § 12111(2). Plaintiff alleges adverse actions by both Champion and Local 1188, dating back to 1997, that he claims were motivated by hostility toward him as a person with a disability. Although Champion is not a defendant in this action, its conduct is relevant because disability-based discrimination by Champion may create a basis for holding Defendant liable pursuant to the ADA.

However, the Court may not consider all of the events dating back to 1997 in determining whether Plaintiff has stated a violation of the ADA because he has not administratively exhausted his older claims for purposes of this lawsuit. Before filing an ADA claim in this Court, Plaintiff was required to file a charge of discrimination with the EEOC, *see* 42 U.S.C. § 12117(a) (incorporating procedures in 42 U.S.C. § 2000e–5). Plaintiff satisfied this administrative exhaustion requirement by filing his December 8, 1999, charge with the MHRC. *Crowley v. L.L. Bean,* 143 F.Supp.2d 38, 52 (D.Me.2001) (explaining that a work-sharing agreement provides that employment discrimination

---

**5.** Moreover, Defendant has not challenged Plaintiff's eligibility under the ADA.

charges filed with the MHRC are considered "dual filed" with the EEOC). However, when he received a right-to-sue letter from the EEOC and opted to file a Complaint in this Court, he was not permitted to raise any new claims in the Complaint that he had not raised in his MHRC charge. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996).

The events described in the MHRC charge begin with Plaintiff's rehiring at Champion in April 1999 and focus on Defendant's role in his subsequent termination. The charge alleges both discrimination and retaliation by Defendant. It does not, however, mention any acts of discrimination that occurred prior to April 1999.[6] Therefore, Plaintiff's claims in this action cannot be based on discriminatory events that happened before April 1999.

 Moreover, because the MHRC charge was filed before the May 31, 2000, arbitration, it does not mention how Defendant's representation at that arbitration fell short. The law is somewhat unsettled about whether the Complaint may rely on events that occurred *after* the MHRC charge was filed. *See Clockedile v. New Hampshire Dep't of Corrs.*, 245 F.3d 1, 6 (1st Cir.2001). However, the purpose of the administrative exhaustion requirement is to provide notice to Defendant of an employee's claims. *Lattimore*, 99 F.3d at 464. Thus, the general rule is that the Complaint must be limited to the events identified in the administrative charge and other events that an investigation of the charge can reasonably be expected to uncover. *Id.*

In this case, the MHRC claim was sufficient to put Defendant on notice that Plaintiff objected to its behavior at the May 2000 arbitration. First, Plaintiff claimed in his charge that "[a]fter June 11, 1999, the union failed to comply with [his] request that the union assist [him] in pursuing a grievance over his termination." (*See* Def.'s Mot. to Dismiss at Attach. C(5) (Docket # 27).) The May 2000 arbitration is an obvious example of this failure. Second, Plaintiff did not receive his right-to-sue letter until ten months after the arbitration, and it is reasonable to assume that the EEOC investigation was still ongoing at the time of the arbitration and that Plaintiff's dissatisfaction with the arbitration could have come to light during that investigation.

In sum, Plaintiff's December 8, 1999, MHRC claim administratively exhausted his discrimination claims based on the events he described in the Complaint dating from April 1999 to May 2000. Several events during this time period are significant for purposes of determining whether Plaintiff has stated an ADA claim against Defendant: (1) Plaintiff's attorney's letter to Champion and Defendant officials in May 1999, advising them of discrimination and harassment against him at the mill; (2) Champion's termination of Plaintiff in June 1999; (3) Plaintiff's filing of a charge with the MHRC against Defendant in December 1999; and (4) Defendant's refusal to assist Plaintiff with the arbitration proceedings in May 2000. These events suggest three alternate theories of ADA liability: (1) a claim that Defendant deliberately acquiesced in Champion's discriminatory conduct; (2) a claim for violation of Defendant's duty of fair representation; and (3) a claim that Defendant retaliated against him for asserting his rights under the ADA.

---

6. The contents of Plaintiff's MHRC charge are consistent with the requirement that the charge of discrimination must be filed within 300 days of the events Plaintiff complains of. 42 U.S.C. § 2000e–6.

## a. Deliberate Acquiescence

 Plaintiff first claims that Defendant is liable to him for acquiescing in Champion's discrimination against him. Plaintiff may establish liability under this theory by proving that (1) *Champion* discriminated against him or retaliated against him on the basis of his disability, and (2) Defendant deliberately or purposely acquiesced in the discrimination or retaliation. *See Seymore v. Shauver & Sons*, 111 F.3d 794, 798 (10th Cir.1997) (recognizing a claim against a union under Title VII for deliberately acquiescing in employer's discrimination) [7]; *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842, 853 (8th Cir.1994) (same); *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1304 (9th Cir. 1982) (same); *Rainey v. Town of Warren*, 80 F.Supp.2d 5, 18–19 (D.R.I.2000) (same); *Nweke v. Prudential Ins. Co. of Am.*, 25 F.Supp.2d 203, 224 (S.D.N.Y.1998) (recognizing an analogous claim under the ADA); *see also Goodman v. Lukens Steel Co.*, 482 U.S. 656, 665–66, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (affirming a finding of liability under Title VII where union's practice was to refuse to process race discrimination grievances). This claim requires a showing that *Champion* bore hostility toward Plaintiff as a person with a disability. It does not require a showing that *Defendant* was motivated by discriminatory intent. *See, e.g., Marquart*, 26 F.3d at 853 (holding that employee need not prove discriminatory animus on the part of the *union* to recover under a deliberate acquiescence theory).

Plaintiff has stated a claim under this theory. Indeed, the central thrust of Plaintiff's assertions is that Defendant cooperated with, facilitated and condoned Champion's disability-based discrimination against him. Specifically, he alleges that by terminating his employment in June 1999, Champion discriminated against him in two different ways. First, his allegations suggest that Champion terminated him in retaliation for asserting his rights under the ADA in a letter from his attorney in May 1999. 42 U.S.C. § 12203(a) (prohibiting any person from taking adverse action against an employee for exercising his rights under the statute). The close temporal proximity between Plaintiff's exercise of his rights and Champion's termination of his employment a few weeks later supports an inference of retaliation. *See Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir.1988).

 Second, he claims that his termination was because of his disability. Although he has not alleged facts that, if true, would establish Champion's discriminatory intent, the Court must be particularly cautious about dismissing discrimination claims simply for a failure to identify such facts. *See McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979). It often proves difficult to state facts tending to show a defendant's state of mind before any discovery has taken place. *Id.; see also Swierkiewicz*, 122 S.Ct. at 998 ("Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case."). Therefore, at this early stage in the pleadings, Plaintiff's allegation that the termination was because of his disability suffices to put Defendant on notice of his contention that Champion discriminated against him.

However, alleging that *Champion* engaged in discrimination is not sufficient. To state a claim against Defendant under this theory, Plaintiff must also allege that

---

**7.** The First Circuit has endorsed the practice of treating Title VII precedent as instructive in interpreting the ADA. *Soileau*, 105 F.3d at 16.

Defendant deliberately acquiesced in Champion's discrimination. He has done so. He claims that he sought the assistance of union officials to remedy the illegal termination but that instead of assisting him, Defendant cooperated with Champion. Specifically, he points to the May 2000 arbitration and Defendant's failure to subpoena the witnesses he requested or assist him in obtaining discovery. These allegations are adequate to put Defendant on notice of Plaintiff's ADA claim for Defendant's deliberate acquiescence in Champion's discrimination.[8]

### b. Duty of Fair Representation

■■■■ The same events may also constitute a violation of the ADA under a second theory of liability, which focuses on *Defendant's* motives rather than those of Champion. That is, Plaintiff may be able to recover against Defendant if he can prove a duty of fair representation claim under the ADA.[9] *See Parker v. Metro. Transp. Auth.*, 97 F.Supp.2d 437, 448–49 (S.D.N.Y.2000); *Nweke*, 25 F.Supp.2d at 219; *Inman v. Nat'l Postal Mailhandlers'*, No. 00 C 6375, 2000 WL 1670947 (N.D.Ill. Nov. 3, 2000); *Armour v. Indep. Limestone Co.*, No. IP99–898–C–T/G, 2000 WL 1701962, *2 (S.D.Ind. March 16, 2000); *Schaefer v. Erie County Dep't of Soc. Servs.*, 82 F.Supp.2d 114, 118 (W.D.N.Y. 2000); *see also Marquart*, 26 F.3d at 853 (recognizing a Title VII claim against a union for breach of its duty of fair repre-

sentation); *Quarles v. Remington Arms Co.*, 848 F.Supp. 328, 331 (D.Conn.1994) (same). To recover under this theory he must be able to prove that (1) Champion breached its collective bargaining agreement with respect to Plaintiff; (2) Defendant failed to address the breach; and (3) Defendant's failure to address the breach was motivated by hostility toward Plaintiff as a person with a disability. *See, e.g., Armour*, 2000 WL 1701962 at *2.

Ordinarily, the nature of the employer's breach is irrelevant to this sort of claim. It is discriminatory motivation on the part of the *union*, in its refusal to remedy the breach, that triggers liability under the ADA. In this case, however, as a practical matter, Plaintiff will have to prove discriminatory intent on the part of *both* Champion and Defendant to establish this theory of liability because the portion of the collective bargaining agreement that Plaintiff alleges Champion breached is a nondiscrimination provision. Functionally, therefore, this theory differs from the deliberate acquiescence theory in that it requires one additional element. To recover under this theory, Plaintiff will have to prove not only that Champion's termination was discriminatory and that Defendant refused to rectify it, but also that Defendant's refusal to address the termination was *itself* motivated by hostility toward Plaintiff as a person with a disability.

■■■■ Although this theory might be more difficult to prove ultimately, at this

---

**8.** It appears that the First Circuit has not yet considered whether a claim for deliberate acquiescence exists under Title VII or the ADA. The Court's decision to allow Plaintiff to pursue this theory is not a conclusive determination that the claim exists but rather a recognition that it is a plausible legal theory worthy of further factual development. *See* Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 at 341–43 (1990) ("The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted

theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.")

**9.** Because this type of duty of fair representation claim arises under the ADA rather than under Section 301 of the LMRA, Plaintiff is able to take advantage of the ADA's longer limitations period. *Parker*, 97 F.Supp.2d at 437; *Nweke*, 25 F.Supp.2d at 220.

stage of the pleadings, Plaintiff only has to allege facts sufficient to put Defendant on notice of this claim. He has done so. He alleges that Champion terminated him on the basis of his disability and that the collective bargaining agreement contains a nondiscrimination clause. He further alleges that instead of assisting him in grieving the breach, Defendant cooperated with Champion at the May 2000 arbitration. Finally, he insists that Defendant's representatives failed to help him because they were biased against him as a person with a disability. These allegations state an ADA claim for breach of Defendant's duty of fair representation.[10]

#### c. Retaliation

The final possible theory of liability disregards Champion's role altogether and focuses exclusively on Defendant's motivation for failing to assist Plaintiff adequately in grieving his termination. If Plaintiff is able to prove that Defendant refused to assist him (at the May 2000 arbitration or otherwise) not strictly because he was disabled, but rather because he exercised his rights under the statute, then Plaintiff may recover for retaliation in violation of the ADA. *See, e.g., Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997) (laying out the elements of a retaliation claim).

 Plaintiff here alleges that he exercised his rights both by having his attorney send the May 1999 letter complaining of discrimination and by making a formal charge with the MHRC. *See* 42 U.S.C. § 12203(a). He also alleges, albeit in conclusory fashion, that Defendant purposely refused to process his grievances in retali-

ation for his assertion of his rights. Taken together, these allegations suffice to put Defendant on notice of Plaintiff's claim that Defendant's failure to properly assist him in grieving his termination constituted retaliation for exercising his rights under the ADA.

#### 3. Summary

In short, Plaintiff may proceed with his ADA claim based on the events associated with his rehiring at Champion in April 1999, the period of his employment between April and June 1999, his termination in June 1999, and subsequent arbitration proceedings. He may seek to prove any or all of the three theories of ADA liability described above: (1) deliberate acquiescence in Champion's discrimination; (2) breach of the duty of fair representation; or (3) retaliation. He may not proceed with his claim pursuant to federal labor law because it is time-barred. Accordingly, the Court grants the Motion to Dismiss only to the extent that it dismisses Plaintiff's section 301/duty of fair representation hybrid claim.

### II. PLAINTIFF'S MOTIONS

Also pending before the Court are four Motions in which Plaintiff seeks relief on a variety of issues related to this litigation (Docket ## 34, 37, 40, 43). Each Motion objects to at least one prior Order of the Court and then sets forth a litany of miscellaneous gripes, largely in the form of a rant. Some of Plaintiff's complaints are an effort to rehash issues that the Court has addressed in prior orders, including the propriety of defense counsel's participation in this case[11] and the number of properly

---

10. The First Circuit has not yet considered a claim for breach of the duty of fair representation brought under the ADA. As noted above, the Court will allow Plaintiff to proceed with this claim but reserves a final decision on whether recognizing such a claim is proper pending further factual development. *See* note 8, *supra*.

11. The Court will allow it. (*See* Order dated Nov. 30, 2001 (Docket # 9).)

named defendants.[12] The Court will not consider these issues again. It will, however, address any other nonredundant issues that it is able to glean from the Motions.

### A. Motion to Object to Court Order (Docket # 34)

In his first Motion Plaintiff objects to Magistrate Judge Kravchuk's nondispositive Order dated February 20, 2002 (Docket # 31). The basis for his objection is not clear. However, the Court has reviewed the February 20 Order and finds that it is neither clearly erroneous nor contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). Therefore, the Court affirms the Order.

■ In addition to objecting to the February 20 Order, Plaintiff also reasserts his generalized objection that some documents have been sent to him improperly addressed to "Joseph H. Greenier, *Jr.*," when his name does not, in fact, include the suffix "Jr." Contrary to Plaintiff's contentions, this clerical error does not constitute "fraud," does not justify his refusing service of documents that are otherwise properly addressed to him at his residence, and does not excuse him from responding to and abiding by the pleadings and orders that he receives. Defendant is ordered to omit the suffix "Jr." from future correspondence.

Third, Plaintiff requests a hearing to demonstrate that the MHRC Investigator's report, which Defendant attached to its Motion to Dismiss, is flawed. He further objects to errors in the report of the NLRB proceedings, also attached to the Motion to Dismiss. These reports have no bearing on the proceedings at this point, and their veracity is irrelevant. Therefore, the Court denies Plaintiff's request for a hearing on these reports.

The Court construes the remainder of this Motion as a response to Defendant's Motion to Dismiss. As such, the Court disposed of the objections in Part I of this Order.

### B. Motion to Object to Court Order (Docket # 37)

In a second Motion, Plaintiff objects to my Order dated February 21, 2002 (Docket # 32). The basis of his objection appears to be that Defendant discriminated against him. This does not constitute a valid basis for reconsidering my February 21 Order, and no affirmation of the Order is necessary.

■ Plaintiff also lodges a continuing objection to Judge Kravchuk's Order dated January 15, 2002. The Court has already considered and rejected Plaintiff's two previous objections to the January 15 Order, and it requires no further affirmation (*see* Order dated Feb. 21, 2002 (Docket # 32)). However the Court notes that in this Motion, Plaintiff particularly protests the portion of the January 15 Order prohibiting the court clerk from docketing any more of his Motions without the Court's permission. There is ample basis for this portion of the order. This case is only at the stage of the Motion to Dismiss, and, to date, Plaintiff has filed no fewer than twenty miscellaneous motions, most of which are not recognized under the Rules, most of which were frivolous and redundant, and all of which have been denied. Even though he is proceeding pro se, Plaintiff is required to follow pleading rules. *Rivera v. Riley*, 209 F.3d 24, 28 n. 2 (1st Cir.2000). Moreover, the Court has the authority to strike portions of filings that are "redundant, immaterial, impertinent or scandalous." Fed.R.Civ.P. 12(f). Under the circumstances, it is within the

**12.** There is one, Local 1188. (*See* Order dated Feb. 21, 2002 (Docket # 32).)

Court's discretion to restrict Plaintiff's filings to those which comport with the pleading Rules. *See Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 (1st Cir.1993) ("Trial judges enjoy great latitude in carrying out case-management functions.") The January 15 Order remains in force.

A number of Plaintiff's protestations in this Motion appear to be discovery-related. He seeks access to documents he claims have been withheld and requests the opportunity to conduct depositions. Because the Court has denied the Motion to Dismiss, it is proper for discovery to proceed, and Judge Kravchuk will schedule a conference to address these discovery issues.

Finally, the Motion offers arguments about the merits of Plaintiff's case and requests relief that the Court is unable to provide. To the extent that this Motion seeks any relief not specifically discussed above, it is denied.

C. Motion to Object to Court Order and Objection (Docket # 40)

A third Motion objects to Judge Kravchuk's Order dated March 7, 2002 (Docket # 38). Again, the basis for Plaintiff's objection is unclear, but the Court has reviewed Judge Kravchuk's nondispositive Order and finds that it is neither clearly erroneous nor contrary to law. *See* 28 U.S.C. § 635(b)(1)(A). Therefore, the Court affirms the March 7 Order.

Plaintiff also asks the Court to reconsider the portion of its February 21 Order denying him leave to add individual union officials as defendants. Nothing in Plaintiff's Motion provides a valid reason for reconsidering that Order, and the Court denies Plaintiff's request.

To the extent that the Motion seeks any additional relief, it is redundant with previous Motions or requests relief that the

Court is unable to provide. Accordingly, the Motion is denied in all other respects.

D. Motion to Object to All Court Orders on Basis of Truth and Justice (Docket # 43)

Lastly, Plaintiff has filed a Motion objecting to all of the Orders entered in this case on the basis that they are unjust. This Motion is wholly redundant with motions the Court has already settled, and the Court strikes it pursuant to Rule 12(f). Fed.R.Civ.P. 12(f).

III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss. It DISMISSES only Plaintiff's claims based on federal labor law and DENIES the Motion to Dismiss in all other respects.

Furthermore, the Court DENIES Plaintiff's three Motions to Object to Court Order (Docket ## 34, 37, and 40) and AFFIRMS Judge Kravchuk's Orders of February 20, 2002 (Docket # 31) and March 7, 2002 (Docket # 38). Finally, the Court STRIKES Plaintiff's Motion to Object to All Court Orders (Docket # 43).

Plaintiff is strongly cautioned to avoid filing frivolous motions and to specifically consult the Federal Rules of Civil Procedure and the Local Rules. He will be held strictly responsible for complying with these provisions.

SO ORDERED.