**Robert DELLAIRO, Plaintiff**

v.

**Timothy GARLAND, Defendant**

**No. CIV. 02–42–B–C.**

United States District Court,
D. Maine.

Sept. 4, 2002.

Robert Dellairo, South Windham, ME, Pro se.

Steven J. Mogul, Gross, Minsky & Mogul, P.A., Bangor, ME, for defendants.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate judge having filed with the Court on July 25, 2002, with copies to the *pro se* Plaintiff and to counsel, her Recommended Decision on Motion to Dismiss 42 U.S.C. § 1983 Complaint in the above-entitled matter (Docket No. 15); and the time for filing objections thereto having expired without any objections having been filed; *see* 28 U.S.C. § 636(b)(1); and this Court having reviewed and consideration the Magistrate Judge's Recommended Decision, together with the entire record; and having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and this Court concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and having determined that no further proceeding is necessary; it is **ORDERED** as follows:

(1)   The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**;

(2)   Defendant's Motion to Dismiss (Docket No. 11) is hereby **DENIED**.

## RECOMMENDED DECISION ON MOTION TO DISMISS 42 U.S.C. § 1983 COMPLAINT

KRAVCHUK, United States Magistrate Judge.

Robert Dellairo, an inmate serving a nine-month sentence at the Penobscot County Jail, proceeding *pro se* and *in forma pauperis*, presses a 42 U.S.C. § 1983 complaint against Timothy Garland alleging that Garland violated Dellairo's constitutional right to be free from cruel and

unusual punishment promised by the Eighth Amendment. (Docket No. 1.)[1] Garland is a physician assistant at the jail. The punishment of which Dellairo complains is that Garland has been deliberately indifferent in responding to a growth in Dellairo's ankle that causes substantial pain and threatens long-term impairment if left untreated. Garland has responded with a motion to dismiss (Docket No. 11) arguing that Dellairo has not sufficiently alleged a deliberate indifference claim and, in the alternative, he should be spared the burdens of this suit because he is entitled to qualified immunity.[2] For the reasons articulated below, I recommend that the Court **DENY** the motion to dismiss.

## DISCUSSION

### A. Factual Allegations

In his original handwritten complaint and a pre-answer amendment filed on April 28, 2002, which is accompanied by an affidavit (Docket No. 8) Dellairo alleges as follows. In September 2001, one week prior to his incarceration, Dellairo was seen in the emergency room of the Eastern Maine Medical Center by a doctor. That doctor told Dellairo that he had a growth in his left ankle that was growing into the bone and needed surgery. He prescribed a pain medication in the interim. The surgery was scheduled but prior to the date set for the surgery Dellairo was incarcerated at the Penobscot County Jail.

At the jail Dellairo was seen by Garland on October 12, 2001, at which point Dellairo described the problems with his left ankle, explained that the growth was growing into his bone, complained that he was in serious pain, and reported that the doctor he had seen just prior to his incarceration had recommended surgery. Garland said he would send for Dellairo's x-rays and get back to him. Several months went by without action by Garland.

During the six months prior to the filing of the complaint Dellairo filled out many medical slips and lodged three grievances. In response to his December 5, 2001, grievance Garland stated that Dellairo's doctor was not refilling his pain medication. Dellairo explains that the pain medication referred to by Garland was for his back and not his left ankle and that Garland should have made sure that he was clear on whether there was an order for pain killer vis-à-vis the ankle. When Dellairo was seen on February 15, 2002, in response to his third grievance Garland became agitated and asked Dellairo to leave his office. With respect to Garland's description of Dellairo as "loud, demanding, and uncooperative" in his report on this interaction, Dellairo states that he was not acting in this manner and that it was Garland who was upset because of Dellairo's efforts to press Garland for treatment.

Finally, after six-months Garland ordered x-rays and concluded that there is a growth in the ankle. However, according to Dellairo, Garland feels "that no further treatment is necessary."

Dellairo alleges that he is in serious pain; that his ankle "hurts extremely bad." He describes shooting pains that spike up to his knee. He has a hard time walking, rotating his ankle, and laying on

---

1. Dellairo also initially named Penobscot County Jail officials, Richard Clukey and Cheryl Gallant as defendants. By letter motion filed March 27, 2002, Dellairo moved and was permitted to amend his complaint to remove these two individuals as defendants. (Docket No. 6.)

2. Dellairo has filed a letter with the court explaining his inability to properly respond to Garland's motion to dismiss. (Docket No. 14.) My proposed disposition of this motion moots the need to provide Dellairo with extra time to respond.

his left side where the ankle is flush with the bed. After seven months the pain is getting worse. He has been given no pain medication, not even Tylenol.

With respect to his requested relief Dellairo seeks treatment for his ankle; specifically he wants the growth removed from his ankle. He also seeks compensatory and punitive damages.

### B. Motion to Dismiss for Failure to State a Claim [3]

#### 1. Standard for Motions to Dismiss in the Context of Civil Rights Claims

In reviewing this complaint to determine whether it states a claim sufficient to survive Garland's motion to dismiss I take all of Dellairo's allegations as true. *Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Since Dellairo is proceeding *pro se* I subject his submissions to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Also in light of Dellairo's *pro se* status, I examine his other pleadings to understand the nature and basis of Dellairo's claims. *Gray*

*v. Poole,* 275 F.3d 1113, 1115 (D.C.Cir. 2002) (citing the holding of *Richardson v. United States,* 193 F.3d 545, 548 (D.C.Cir. 1999) that District Court abused its discretion when it failed to consider the *pro se* plaintiff's complaint in light of his reply to the motion to dismiss).[4]

In response to Garland's suggestion that prisoner complaints "should be disposed of at the earliest opportunity," I note that Federal Rule of Civil Procedure 8(a)(2) requires no more from a complaint than a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Recent case law has counseled that a court must be very wary of requiring more than a simple notice pleading. *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, ——, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."); *Walker v. Benjamin,* 293 F.3d 1030, 1039 (7th Cir.2002) (reversing in part a qualified immunity determination in favor of defendants premised on insufficient notice pleading, concluding that the 42 U.S.C. § 1983 plaintiff "need not set out in detail all of the facts upon which he bases his claim. Rule 8(a) requires only that the

---

**3.** Though Garland cites the exhaustion of administrative remedies requirement of 42 U.S.C. § 1997e(a) in footnote 2 of his motion to dismiss, he does so only in support of his argument that Dellairo's complaint is subject to dismissal under subsection (c) of § 1997e for failure to state a claim. As Garland has not pressed non-exhaustion as a ground for dismissal and in view of Dellairo's allegations that he filed three grievances there is no basis for a § 1997e(a) dismissal here.

**4.** Accordingly, I do consider the facts alleged by Dellairo in his affidavit attached to his amended complaint; Garland has asked me to in his motion to dismiss. (Mot. Dismiss at 2.) I also note that Dellairo attached two reports from Eastern Maine Medical Center documenting the diagnosis of the growth and indicating it was about 50% of the · way

through the tibca in September 2001. It notes a concern that a fracture of the tibea was very likely and recommended, among other things, pain medication. It is well settled that "[m]aterial that has been submitted as part of the complaint may properly be considered by the court in determining a motion under Fed.R.Civ.P.12(b)(6)." *See Sullivan v. United States,* 788 F.2d 813, 816 n. 3 (1st Cir.1986) (citing 2A Moore's Federal Practice ¶ 12.07 [2.–5] at 12–68; *Amfac Mtg. Corp. v. Ariz. Mall of Tempe,* 583 F.2d 426, 429–30 (9th Cir.1978)). This documentation is not necessary to Dellairo at this juncture, as I conclude that his bare allegations are sufficient to see him through this motion to dismiss; however, presentation of this type of credible evidence may well prove crucial when Dellairo prepares to defend a summary judgment motion should Garland file one.

complaint give the defendants fair notice of what the claim is and the grounds upon which it rests"); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). *Swierkiewicz* does not completely answer Garland's argument that civil rights actions "are subject to a heightened pleading standard," that is, it does not make it clear whether a civil rights action might be one of *Swierkiewicz's* limited exceptions. This is a question open to debate under First Circuit and District of Maine precedent. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989) (observing that a plaintiff has the obligation to plead factual allegations regarding each material element necessary to support each of the plaintiff's legal theories and suggesting that the "need is perhaps greater where allegations of civil rights violations lie at the suit's core"); *Greenier v. Pace, Local No. 1188*, 201 F.Supp.2d 172, 176–77 (D.Me.2002) (Singal, Dist. J.) ("The approach that the Supreme Court set forth in *Swierkiewicz* requires the Court to treat complaints more liberally than recently has been the practice of either this Court or the First Circuit."); *Goodman v. Bowdoin College*, 135 F.Supp.2d 40, 52 (D.Me.2001) (Carter, Dist. J.) ("In light of the Supreme Court's unequivocal language regarding the impropriety of judicially imposed heightened pleading standards and the distinctions between the governmental immunity doctrine and substantive civil rights claims, without more explicit instructions from the Court of Appeals to apply heightened pleading requirements to claims that do not implicate the governmental immunity doctrine, the Court does not believe that it is wise to ... to apply a heightened pleading requirement in the instant case."). However, I conclude that I do not need to cross this particular bridge today. As explained below, this complaint is not fuzzy on the facts material to an Eighth Amendment deliberate indifference claim and, because of the strength of Dellairo's allegation on the substantive claim, Garland's claim to immunity is not ripe for decision, even if I applied some fashion of heightened pleading requirement.

### 2. Stating a Claim Under the Eighth Amendment for Deliberate Indifference to a Serious Medical Condition

The United States Supreme Court has framed the broad outlines of the deliberate indifference inquiry in two cases: *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The *Estelle* Court identified in the Eighth Amendment protection the "government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103, 97 S.Ct. 285. It observed: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id. See also Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) ("[T]he substantive limits on state action set by the Eighth Amendment," when it "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs" including food and medical care).

In *Farmer* the Court more precisely articulated the standard a plaintiff must meet to hold a prison official liable for Eighth Amendment claims of this ilk. It identified two prongs. First, the deprivation alleged must be "objectively 'sufficiently serious.'" 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). I read *Farmer* to include within this first prong a consideration not

only of the extent of illness, injury, or pain but also of what steps were or were not taken by the defendant without addressing motivations. *Walker*, 293 F.3d at 1037 ("The deprivation suffered by the prisoner must be objectively sufficiently serious; that is, it must result *in the denial* of the minimal civilized measure of life's necessities," emphasis added). Second, under *Farmer*, the defendant must have a culpable state of mind, which means that the defendant was deliberate in his indifference to the inmate's health or safety. *Id.*

■ I conclude that Dellairo has "alleg[ed] a sufficiently serious deprivation that is, 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir.2002) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). He meets the Tenth Circuit's standard on two scores: his is a medical condition that has been diagnosed by a doctor *and* that is sufficiently serious that a layperson would see that doctor intervention was required. *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir.2002).

Dellairo alleges that prior to his entry to the jail he was diagnosed with the ankle growth and scheduled for surgery in short course. He alleges that the emergency room doctor was concerned that the growth was growing into the bone. He states that he was in constant pain and that the level of pain increased as he went untreated for over seven months in the jail.[5] Though Dellairo made regular complaints to Garland regarding his pain and the need for treatment, no treatment was provided even after a second set of x-rays was taken while Dellairo was in the Jail that reconfirmed the presence of a growth. Furthermore no steps were taken by Gar-

land to remediate Dellairo's pain; Dellairo alleges that he was not even provided with Tylenol. *Morales*, 278 F.3d at 133 (stating that the plaintiff "arguably pleaded facts sufficient to show a serious deprivation by alleging that he suffered constant, unremediated pain"); *see also Reed v. McBride*, 178 F.3d 849 (7th Cir.1999) (reversing summary judgment in favor of defendants in a deliberate indifference to serious medical needs case involving denial of food and essential medications). Thus, viewed under *Farmer's* first prong, I conclude that Dellairo has plead facts that would if proven establish a deprivation that is objectively sufficiently serious. 511 U.S. at 834, 114 S.Ct. 1970.

With respect to *Farmer's* subjective second prong, this is an element that is not so cleanly disposed of in a motion to dismiss as it involves proof of a culpable state of mind. *Estelle* provided that the plaintiff must prove an "unnecessary and wanton infliction of pain"; motivation by the defendant that is "repugnant to the conscience of mankind." 429 U.S. at 105–06, 97 S.Ct. 285. However, Dellairo need not prove that Garland acted with the purpose of harming Dellairo: "It is enough to show that [Garland] actually knew of a substantial risk of harm to [Dellairo] and acted or failed to act in disregard of that risk." *Walker*, 293 F.3d at 1037. *See also Farmer*, 511 U.S. at 842, 114 S.Ct. 1970 ("Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.").

■ I conclude that Dellairo's allegations that Garland knew about the severity

---

5. The fact that Dellairo's condition was pre-existing at the time of his arrival at Penobscot County Jail does not defeat his claim. *Watson v. Caton*, 984 F.2d 537 (1st Cir.1993) (reversing dismissal of the claims in the complaint that alleged that prisoner was denied any treatment for a pre-incarceration hand injury).

of Dellairo's condition and his ongoing pain but refused to provide treatment or pain relief are sufficient to meet the second *Farmer* prong for purposes of surviving a motion to dismiss. Contrary to Garland's characterization, this is not a dispute over the adequacy of medical treatment; Dellairo is complaining about the out-right refusal by Garland to treat a serious and prolonged ankle condition or to alleviate the associated pain. *See Walker*, 293 F.3d at 1038–39 (reversing summary judgment in favor of two defendants who had refused to treat a bone infection that caused displacement of a bone, who failed to carry through with post-operative instruction by an outside physician, and who withheld pain medication in the face of obvious pain). Dellairo has sufficiently alleged that Garland "knew facts from which [a jury] could infer that absent further treatment or more prompt treatment, [Dellairo] faced serious harm." *Morales*, 278 F.3d at 133. Assuming Dellairo can prove his allegation this amounts to more than negligence or medical malpractice. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (noting that 42 U.S.C. § 1983 provides a right of action for civil rights violations and cannot be used to sue correctional officials for negligence).

### C. Qualified Immunity

■ Qualified immunity shields government employees performing their discretionary functions from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *See also Davis v. Rennie*, 264 F.3d 86, 113 (1st Cir.2001) ("Qualified immunity protects state actors 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known,' " quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ The United States Supreme Court insists that courts undertaking the qualified immunity analysis do so in the proper sequence. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A court required to rule upon the qualified immunity issue," the Court stated "must consider this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* at 201, 121 S.Ct. 2151 (quoting *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). My conclusion above that Dellairo has stated a claim for a violation of his Eighth Amendment right to be free from cruel and unusual punishment also means that the answer to this inquiry is "yes," he has alleged facts that would support a determination that Garland violated a constitutional right.

Next I ask if this right was clearly established at the time of Dellairo's interactions with Garland. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. "This inquiry," *Saucier* stressed, "must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow [government officials] to avoid the burden of trial if qualified immunity is applicable." *Id.* Garland somewhat obliquely contends that "it is not clearly established that in the absence of knowledge of the basis for the need for medical attention, refusal to grant an inmate's request for medical attention was a constitutional violation." He also states that since in his view Dellairo has not stated a claim that a constitutional right has been infringed the constitutional right cannot be clearly established.

As documented by the Supreme Court and Courts of Appeal cases cited in my discussion of whether Dellairo stated a claim for deliberate indifference to serious medical needs, well before December 2001 courts have recognized that inmates have a right to receive adequate medical care for serious medical conditions. Dellairo's allegations concerning his medical condition and the associated pain bring him squarely within the parameters of these precedents. *See Walker,* 293 F.3d at 1040–41 (swiftly rejecting the notion that the defendants are entitled to qualified immunity on very similar facts).

Finally, I must ask "whether a reasonable, similarly situated official would understand that the challenged conduct violated the established right." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. *Accord Aponte Matos v. Toledo Davila,* 135 F.3d 182, 186 (1st Cir.1998). In other words, it is possible that Garland violated Dellairo's clearly established constitutional rights but is immune from suit because it was objectively reasonable for him to do so because the unlawfulness of his actions was not apparent to him. *See Anderson,* 483 U.S. at 640, 643–44, 107 S.Ct. 3034 (observing that qualified immunity may extend to actors that violate the constitutional rights of the plaintiff). Again, with the improper state-of-mind sufficiently alleged by Dellairo, I cannot but conclude that "it would be clear to a reasonable officer that his conduct"—deliberately withholding all treatment and pain medication from an inmate with a growth on his ankle that is growing into a bone and causing increasing pain— "was [ ]lawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151.

Finally I note that my conclusion at this pleading stage that Garland is not entitled to qualified immunity does not foreclose him from raising the defense at a later stage of this action. At the moment I have considered only the allegations of the complaint. Garland may well be able to produce evidence in a summary judgment record with respect to his treatment and interactions with Dellairo that changes the complexion of this deliberate indifference claim and that would entitle him qualified immunity at a stage short of trial.[6]

### CONCLUSION

For the reasons stated above I recommend that the Court **DENY** the motion to dismiss (Docket No. 11).

### *NOTICE*

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

July 25, 2002.

---

6. Garland has also addressed the viability of "implied state law claims." Nowhere in his pleading to date does Dellairo suggest that he is proceeding with any claim other than a § 1983 deliberate indifference claim. While I am "less stringent" with *pro se* pleadings, *Haines,* 404 U.S. at 520, 92 S.Ct. 594, it is not this court's practice to look so far beyond the pleadings for conceivable causes of actions.